Roane J.
This contract having been made in Pennsylvania, without a view to a performance in any other State, the agreement made upon the trial of the cause referring to those laws, was an act of supererogation, and entirely unnecessary 5 for it is clear, that the laws of that country where a contract is made must govern the fate of it.
The rule which I have just mentioned is laid down in the case of Robinson v. Bland, 2 Burr. 1679. and is *376 well explained and illustrated in Eonblanque’s excel» lent Treatise of Equity, 2 vol. page 443.
It is true, that the laws of one country, have not in themselves an extra territorialforce in any other; but by the general assent of nations, they are always regarded in contracts formed there.
A distinction however is attempted in this case, under the idea, that this is a penal laxo, and that the Courts of one country will never execute the penal laws of another. The principle is true, but inapplicable. The Law of 1777, points out a mode of discharging debts different from that which is customary; it may produce an injury, but it is not therefore penal. The case cited from Bro. C. C. 376, is in principle like this. Payment in depreciated paper money, was a penalty, (under this interpretation oí the word,) in South Carolina ; beyond what existed in England; yet the lex loci prevailed. The only difference between that and this case is, that in that, the loss was partial, in this total, but the principle is precisely the same.
We are now to inquire, how the law of Pennsylvania stands upon this subject. The Act of January 1777, in the preamble declares, “ that the emissions of continental and State bills ought to be alike taken in discharge of debts,” &c. To effect this, it was necessary to make them alike in all those qualities, which were any ways connected with the payment of debts. If received by the creditor, they were alike a discharge of so much of the debt. But if a tender and refusal of continental money was not a discharge of the debt, it was not alike taken with State money, because if State money had been tendered and refused, the debt would have been discharged.
The third section declares “ that the State money,” there described, “ shall in like manner be a legal tender, and be received in payment of all debts as aforesaid,” &c. Now' the two descriptions of money would not be alike in their tenderable qualities, if the refusal of one discharged a debt, and the other did not. So that, if the words “ said bills” in the next sentence, do *377 not refer to continental bills, yet by assigning certain qualities to State bills, they at once attach to continental bills, which it is declared are to be alike taken 'in discharge of debts, and to be in like manner a legal tender.
But the sixth section of the law clears the question of all doubt as to the operation of the third clause, upon continental bills. It declares, 6e that where any person stands bound to pay sterling money, the creditor shall receive continental bills of credit, or State bills, in payment thereof at a particular rate, if tendered as aforesaid., and on refusal thereof shall be deemed and taken to be within the meaning of this Act in cases of refusal of the bills of credit in tender as aforesaid.” And there can be no doubt, but that the clear scope of the law was to assimilate continental to State bills in their tenderable quality.
The next question is, was this Act in force at the time the tender was made.
It is argued by the appellants counsel, that the-generality of the expressions in the third section of the Act of May 1778, operated a virtual repeal of the Act of January 1777, so far as it related to a tender and refusal of continental bills, producing a forfeiture of the debt. It is contended, that the Legislature began then to acknowledge the injustice of the Act of January 1777. Yet in March 1778, when it was equally discernable, the Legislature only repeal the law as to State bills.
Every rule of construction is- opposed to the argument of the appellants counsel-upon the operation of the third clause of the Act of May 1778. The Court will never favour the repeal of a law by implication. 4 Bac, Ab. 638.
If there be two affirmative Statutes upon the same subject, the one does not repeal the other, if both may consist together, and we ought to seek for such a construction as will reconcile them together.
The words all the bills of credit, must be confined to such as had not been before provided for consistently with the intention of the Legislature; and these *378 were, the emissions subsequent to the 29th of Janaury 1777. By this interpretation of the words, all the laws are reconciled, and we avoid the necessity of an implied repeal, which, if it had been intended, we ought reasonably to suppose it would have been expressed. The words, “ all the bills of credit,” in the case of Johnson v. Hooker, were not considered as producing the effect which has been contended for; and though I do not consider myself bound by that decision, yet the authority of it is entitled to respect and fortifies my construction of the laws.
Upon the whole, I think the judgment should be affirmed.
Carrington J. — The only question arises out of the construction of the laws of Pennsylvania, which must assuredly govern this contract, as it was formed in that State, and discharged there, if it be discharged at all. I have read with attention, and have considered all the laws of that State upon this subject, and I entirely concur with the Judge who has precededme, in the construction and operation of them. The appellee having conformed to the Law of January 1777, he must enjoy such benefits as that law gave him, unless he was deprived of them by subsequent laws. In March 1778, the Legislature called in those emissions which had been made a legal tender by the Act of January 1777, and a refusal of which, was declared to be a forfeiture of the debt; but they do not expressly, or by implication, repeal that law, except as to such emissions. The Legislature so far from discovering a disposition to relax at this early period, emitted more money as late as April 1781, and declared it a legal tender. The first law which operated a repeal of the Act of January 1777, passed in 1781.
It is contended, that the Act of May 1778 virtually repealed it. If the two laws may be reconciled, a constructive repeal is inadmissible, and that they may be, has been already demonstrated by the Judge who has given his opinion. The case of Johnson v. Hocker *379 is expressly in point, and accords entirely with my sentiments upon this subject.
The operation of the Act of Janaury 1777, upon this case, has been denied, under an idea, that it is penal, and consequently, not to be enforced by the Courts of this State. But the appellee in this case is not in pursuit of a penalty, and does not ask the aid of the Court to enforce it. He protects himself from the claim of the appellants, by pleading a discharge by the laws of another State having competent power over the subject. I confess that the opinion of Judge Shippen, in the case of James v. Allen, appears an extraordinary one to me: I cannot discover, how the demand in that case could be considered as local. The judgment in New Jersey did, in my mind, completely extinguish the original claim; for suppose the debt had been due by bond, the bond would of course ha\re been filed in the cause, and though an action of debt might have been maintained upon the judgment yet surely it could not have been upon the original debt, which was merged in the judgment.
As a payment to one is a payment to all the joint obligees, so it is clear, that a tender to one is a tender to all; for if this were not the case, it would be almost impossible to make a valid tender, where there were many obligees.
As to the hardships of this case, we have nothing to do with it. The State has got two thirds of the money, and it would be equally hard, if not more so upon the debtor, if he were now obliged to pay the whole again.
The President. — -Though very much indisposed, I will endeavour to state the grounds of the opinion which I am to give. The question is, whether the tender and refusal in the present case, produced a forfeiture of the debt according to the laws of Pennsylvania, or whether it operated only as a tender at common law, to stop the interest until again demanded.
But before I consider the case upon its merits, I will endeavour to clear it of some preliminary objections. *380 made by the counsel. The first was, that the Act of 1111, should not be regarded by us, because it is penal, so far as it relates to the tender and forfeiture.
It seems to be admitted on all hands, that in cases of contracts, the laws of a foreign country where the contract was made, must govern. The same principle applies, though with no greater force, to the diñe» ent States of America ; for though they form a confederated government, yet the several States retain their individual sovereignties, and, with respect to their municipal laws, are to each other foreign.
But this is called a penal law. It may deserve very hard names, but it cannot be called penal. It is not for us to justify the morality of the law, but to understand clearly the legislative will and to execute it. If the law had subjected the creditor to a penalty for his refusing to receive the money, and the debtor were now prosecuting him to recover it, the principle contended for, which I admit to be correct, would then apply. But it is the creditor -who sues, and the defendant pleads a discharge of the debt which is the foundation of the action, under the laws of that country, where the contract was made. It is no more penal, than the Act of Limitations, the Bankrupt Laws, or the like. The decision in the case of Johnson v. Hocker is upon the very point, and is complete. Being however a single case, and subject to revision, it has not the authority of a determination of the supreme judiciary of that State, and would not perhaps be considered even there as absolutely binding j but it may with propriety be referred to for illustration, and as such, is entitled to the respect of this Court.
Upon the merits. The first objection made by the appellant’s counsel is, that the third section of the Act of January 1777, must be confined to state bills only; that the words “ said bills” refer to them as the next antecedent. However this may be according to the strict rules of grammatical construction, it is not the correct rule of interpreting a Statute. To get at the meaning of the Legislature, we are not confined *381 to the order of the sentences, but must take into view the whole law. The Legislature have said enough . to shew that their intention was to place continental and State bills upon the same ground. The second section makes the former current, and receivable in payments and discharge of debts. The third declares, that State bills shall in like manner be a legal tender, and be received in payment. Then follows the effect of a tender and refusal, and the words, “ any of the said bills” comprehends each class before mentioned, and cannot be confined to any one of them. It is to be remarked, that in the thirteenth and fourteenth sections of the same law, the former of which declares the penalties for refusing, and the latter for counterfeiting the money, the same expression (“ any of the said bills”) is used. Although the subject is divided into sections, I have no doubt but that the spirit, as well as the just exposition of the words of the law, comprehends continental as well as State bills, in the clause which respects the forfeiture. The reason for dividing the subject into sections, is obvious; the second describes at what rate continental dollars should be estimated in shillings and pence, which was not necessary as to State bills.
We are next to inquire, if this law be repealed expressly, or by implication ? The Act of March 1777, directs an emission of 200,000/., and declares it a legal tender. It was of course, a tender only at common law. The tenth section of this law declares, £t that all bills emitted before the 1st of July, 1759, shall not pass in payment of any debt or demand, except for taxes, See.” but not a word is said respecting continental bills; yet it was contended at the bar, that the words all bills operates a repeal of the Act of January. The rule is, that where there are two affirmative Statutes, if they do not conflict with each other, the latter does not repeal the former. Repeals by implication are never favoured by Courts. Whatever apparent inconsistencies may appear in the declarations of the legislative will, yet it is not decent to" presume that they would change their mind upon the
*382 subject, without saying so in express terms. But if the two laws are absolutely in opposition to each other, then, since the latter will prevail, the former must of. necessity, be considered as being altered. If however there be different subjects for the two laws to operate upon, there is no inconsistency, and consequently no necessity for presuming an appeal. Now apply these principles to the present case. Continental and State bills were the subject of the first law; that law may still subsist in all its force as to the former, without in the least conflicting with the Act of March 1777, which is confined to State bills. The same observations apply to the Act of March 1778; it applies to state bills altogether, and was intended to destroy the preference, which the regal money had obtained over that emitted by the State. In the same . manner is the Act of May 1778 to be interpreted, which speaks expressly of continental bills. There tv ere emissions prior, and others subsequent, to January 1777. The former weré provided for by that Act; the latter were not. This law then may with propriety, and with great reason be applied to the subsequent emissions, by which the necessity of an implied repeal of the first law is avoided.
But it is contended, that if the Act of January 1777, was in force in March 1780, the tender was' not made conformably with the requisites of that law; that it ought to have been made to all the obligees. As a payment to one is a payment to all, it as certainly follows, that a tender to one is a tender to all. So a release by one, binds the whole. There were four days of grace allowed, in which time the obligee, to whom the tender was made, might have consulted with the others.
Upon the whole, I concur with the rest of the Court, that the debt in question was discharged by the tender and refusal, and therefore,
The judgment must be affirmed.