BOARD OF TRUSTEES OF THE VACATION TRUST CARPENTERS LOCAL NO. 1780, BOARD OF TRUSTEES OF THE CARPENTERS HEALTH AND WELFARE TRUST OF SOUTHERN NEVADA, BOARD OF TRUSTEES OF THE CARPENTERS REVISION TRUST FOR SOUTHERN NEVADA, BOARD OF TRUSTEES OF THE CARPENTERS APPRENTICESHIP TRUST (JOINT TRUST FUNDS), Appellants and Cross-Respondents, v. DURABLE DEVELOPERS, INC.; GOODMAN, OSHINS, BROWN & SINGER, Respondents and Cross-Appellants.

No. 13852

September 5, 1986        724 P.2d 736

*Lionel Sawyer & Collins,* Las Vegas, for Appellants and Cross-Respondents.

*Nitz, Schofield & Walton,* Las Vegas, for Respondents and Cross-Appellants Durable Developers, Inc.

*Oshins, Brown, Singer & Wells,* Las Vegas, for Respondents and Cross-Appellants Goodman, Oshins, Brown & Singer.

# OPINION

*Per Curiam:*

This is an appeal and cross-appeal from an amended judgment of the district court in a statutory garnishment proceeding. The judgment of the district court determined the priority of conflicting claims to funds owed by Durable Developers, Inc. to Marchini Construction, Inc., the judgment debtor.

## FACTS AND PROCEDURAL BACKGROUND

On July 21, 1980, the Board of Trustees of the Vacation Trust Carpenters Local No. 1780 and other unions (Trustees) obtained a judgment against Marchini Construction, Inc. (Marchini) in the sum of $409,479.69. This judgment arose out of Marchini's failure to pay employee fringe benefits to the Trustees which became due while Marchini was performing as a subcontractor to Pardee Construction Company and Durable Developers, Inc. (Durable).

During 1980, Durable was the general contractor and owner of two residential housing development projects known as Pecos Estates and Villa Bonita Oeste in Las Vegas, Nevada. Durable employed Marchini as its framing subcontractor on the two projects. Marchini also agreed to provide the rough lumber and roof trusses for both projects. The subcontracts between Durable and Marchini contained a number of provisions intended to insure that Durable receive all work, labor and materials free of any potential obligations, liens or claims of any kind.[1] The subcon-

---

[1]For example, paragraph 4 of the subcontracts provides as follows:

> In the event Subcontractor fails to pay obligations of any kind incurred by him in the course of his performance of this Subcontract or if a claim of lien shall have been filed upon all or any part of the property as a result of Subcontractor's failure to pay obligations incurred by him in the course of his performance of this Subcontract, then Contractor shall have the right to retain out of any progress payment otherwise due an amount sufficient to indemnify Contractor and Owner against any such lien or claim. Subcontractor, if requested, before becoming entitled to receive any monies under this Subcontract, shall furnish to Contractor receipted material bills and written waivers of lien rights for all material furnished for the job from the commence-

tracts expressly provided that Durable had the right to retain out of any progress payment otherwise due an amount sufficient to indemnify the contractor against any liens or claims, and required Marchini to furnish Durable with applicable labor and material lien releases. During the course of performance of the subcontracts, Marchini ordered materials from Las Vegas Plywood, Inc. (Las Vegas Plywood), and Van's Builders Supply, Inc. (Van's). Las Vegas Plywood and Van's commenced material deliveries to the job sites in August and September, 1980.

On August 6, 1980, Marchini assigned the first $250,000 payable to it under the framing subcontracts to the law firm of Goodman, Oshins, Brown & Singer (the law firm). At the time of the assignment, Marchini was indebted to the law firm as a result of Marchini's oral guarantees of loans and legal fees owed the law

ment of work by Subcontractor to the date of proposed payment and, in addition, if requested, Subcontractor shall furnish a written statement from each of Subcontractor's employees who have performed work upon the job reflecting payment to each said person of all wages or money due him. (Emphasis added.)

Paragraph 9 thereof states:

*Subcontractor agrees to pay when due all claims for labor and materials* or either thereof furnished in the performance of this contract *and Subcontractor agrees to prevent the filing of any claim of lien by laborers, materialmen,* or other classes of individuals entitled to file claims of lien. In the event any such lien is filed, Subcontractor agrees that not later than ten days after written demand is addressed to him, Subcontractor will cause the removal of the said lien constituting a cloud upon the title of the property upon which the said improvements are erected. . . ." (Emphasis added.)

In addition, Exhibit "A"—Addendum to Contract Paragraph No. 22 provides:

1. Subcontractor shall furnish *Contractor* with the following:
. . .
4. A Surety bond and/or audited proof for payment of Employer contributions to the State of Nevada, Employment Security Dept.
. . .
d. *The required labor and/or material lien releases* (must be attached to invoices).
e. A list of your suppliers, with addresses, telephone numbers and authorized signatures of person(s) signing lien releases.
f. *Copies of NIC Reports with cancelled checks.*
. . .
i. *Copies of Union Reports with cancelled checks.*
3. NOTES:
. . .
b. *Prior to payments, all invoices must be* approved by a General Superintendent and must be *supported by the proper lien releases, etc.,* as indicated in Section 1.
c. Final contract payments to Subcontractors will be made when full completion of said contract is of record with Contractor, Owner and Inspector. (Emphasis added.)

firm by third parties. Although the amount of the indebtedness is disputed, the district court found the amount to be $129,000. According to the findings of the district court, the remaining $121,000 of the $250,000 assignment was given to secure contemplated future advances by the law firm to Marchini. Durable consented to this assignment on August 15, 1980, and in September of 1980, Durable paid the law firm $48,233.11 from the proceeds of the framing subcontracts.

On October 17, 1980, the Trustees served a writ of garnishment on Durable in an effort to satisfy their previous judgment against Marchini.[2] In response to service of this writ, Durable attempted to determine the amount of funds it actually owed Marchini under the subcontracts. To that end, Durable contacted Las Vegas Plywood and Van's, requesting invoices detailing the amounts each materialman was then owed for materials supplied to Marchini. Pursuant to Durable's request, Van's submitted an invoice to Durable in the amount of $67,099 for roof trusses supplied to Marchini; on October 27, 1980, Durable paid Van's this amount. Las Vegas Plywood also submitted an invoice to Durable in the amount of $181,041 for materials supplied to Marchini, and on October 28, 1980, Durable issued a check in this amount to Las Vegas Plywood. Durable then made additional payments to the law firm pursuant to the assignment agreement on October 28, 1980, and November 12, 1980, totaling $136,775.96.[3]

After deducting and paying over the amounts due to Van's, Las Vegas Plywood, and the law firm, Durable retained $80,000 as monies due and owing under its subcontracts with Marchini. Because of a pending dispute with the State Industrial Insurance System (SIIS), concerning the monies owed the SIIS by Marchini, Durable allegedly was unable to determine the exact remaining amount due Marchini.[4] Accordingly, Durable answered the Trustees' garnishment interrogatories concerning amounts due to Marchini in the following manner: "Sums may become due to Defendant Marchini Construction, Inc., but the amount, if any, after deducting assignments and offsets is unknown at this time." The Trustees never filed a traverse to this answer.

---

[2] The Trustees had previously served a writ of garnishment on Durable in September of 1980, but they concede this initial service was improper.

[3] In total, Durable paid the law firm $185,283.99 pursuant to the firm's assignment agreement with Marchini. However, as indicated above, only $136,775.96 was paid after service of the writ of garnishment.

[4] At the time of this litigation the SIIS was known as the Nevada Industrial Commission.

The Trustees subsequently filed a motion for judgment on the pleadings, requesting that a judgment be entered against Durable for any amounts due or which might become due Marchini from Durable. Durable in turn moved for a judgment releasing and discharging it from any obligation to the Trustees pursuant to service of the writ of garnishment. Before these motions were heard, the district court, pursuant to the stipulation of the parties, permitted the law firm to intervene in the garnishment proceedings to protect its interests in the subject funds. In essence, the law firm claimed a priority over the Trustees to any funds held by Durable for Marchini's benefit. On February 27, 1981, the district court granted the Trustees' motion for judgment on the pleadings and scheduled a hearing to determine the priorities of the claims to the money due and owing as a result of Durable's subcontracts with Marchini.

In the meantime, in December of 1980, the Trustees initiated a separate action in the district court against Durable (Case No. A201547), alleging that Durable owed the Trustees $23,000 pursuant to NRS 608.150 as a result of Marchini's failure to pay certain employee fringe benefits to the Trustees. Additionally, discovery indicated that both Las Vegas Plywood and Van's had paid a portion of the payments received from Durable to Marchini. In order to avoid the possibility of multiple and inconsistent determinations on the Trustees' claims, Durable filed a motion to consolidate Case No. A201547 with the garnishment proceedings. Durable also moved to join the materialmen and Pardee Construction Co., the other general contractor, as parties, alleging that Pardee was also liable for a large portion of the fringe benefits which Marchini had failed to pay to the Trustees. The district court denied these motions.

At the post-judgment hearing to determine the priority of distribution of the garnished funds, the district court heard oral argument, declared that it was trying the matter on affidavit, refused to allow the parties to present witnesses or oral testimony, and accepted the affidavit of the Trustees' accountant over Durable's objection without affording Durable an opportunity to cross-examine the accountant.

After the hearing, the district court concluded, *inter alia,* that Las Vegas Plywood and Van's had substantially complied with the notice provisions of the applicable materialman's lien statutes. The court also concluded that Durable was entitled to set off the amounts Marchini actually owed Las Vegas Plywood and Van's, but that $44,170 of the monies paid to the materialmen after service of the writ of garnishment was actually paid to Marchini as a "kickback." Determining that Durable "acted at its own risk regarding any payment or portion thereof which was

improper," the court awarded the Trustees the amount of the "kickbacks."

As to the payments Durable made to the law firm pursuant to the $250,000 assignment, the district court rejected the Trustee's contention that the assignment was voidable as a fraudulent conveyance. *See* NRS 112.050 and 112.060. The court also found that $121,000 of this assignment was given to secure future advances by the firm to Marchini, and thus was subject to the provisions of Article Nine of the Uniform Commercial Code, NRS 104.9101-104.9507. Because the firm had failed to file the financing statement required to perfect a security interest under Article Nine, *see* NRS 104.9302(1), the district court concluded that the law firm's interest in the $121,000 was subordinate to that of the Trustees, the lien creditor. *See* NRS 104.9301. The lower court further determined that $129,000 of the $250,000 assignment, which was given to satisfy the previous indebtedness of Marchini, was exempt from coverage under Article Nine of the UCC because it was not intended to have an effect as security, because it was not made within the typical commercial financial setting, and because it constituted a "single account" within the meaning of the Article. *See* NRS 104.9104(6). Accordingly, the district court concluded that Durable had unjustifiably paid $56,009.07 to the law firm after service of the writ of garnishment ($185,009.07 total payments under the assignment less $129,000, the amount outside the scope of Article Nine). The district court awarded this sum to the Trustees.

Finally, the district court awarded the Trustees the remaining $80,000 due Marchini, although Durable sought to retain these monies as setoffs against additional potential claims which Durable alleged might be filed against it as a result of Marchini's failure to pay certain employee insurance benefits to the SIIS and fringe benefits to the Trustees while a subcontractor on Durable's projects.

Thus, the district court entered an amended judgment in favor of the Trustees for $180,179.07, together with interest and attorney's fees in the amount of $22,000. As indicated above, the court's amended findings of fact and conclusions of law indicate that the judgment was comprised of $56,009.07 paid to the law firm under the assignment after service of the writ of garnishment, $44,170 improperly paid to Las Vegas Plywood and Van's as offsets, and $80,000 retained by Durable as proceeds due Marchini.

The Trustees, Durable and the law firm have all appealed from the court's amended judgment. Further facts will be presented below where relevant to discussion of the parties' contentions.

### PRELIMINARY CONTENTIONS

On appeal, Durable raises two contentions which we dispose of prior to discussing the parties' claims to the disbursements made and funds held by Durable.

Durable first contends that the district court erred in failing to grant Durable's motion for a judgment releasing and discharging it as the garnishee. Because the Trustees failed to file a traverse to Durable's answer to the garnishment interrogatories, Durable contends that its answer should have been deemed true and that, consequently, the lower court should have found that Durable did not owe Marchini anything at the time Durable's answer was filed.

Durable's argument is without merit. It is true that a garnishor may file a reply by affidavit to a garnishee's answer, and that if the plaintiff garnishor fails to reply within the statutory period, he shall be deemed to have accepted the answer of the garnishee as true and judgment may be entered accordingly. *See* NRS 31.330. If Durable had answered that *no* funds whatever were due Marchini, and the Trustees had failed to reply, the Trustees would be bound by Durable's answer.

Durable's answer, however, did not deny the existence of any debt to Marchini. As previously noted, Durable answered the interrogatory concerning possible indebtedness by stating, ''Sums may become due to [Marchini], but the amount, if any, after deducting assignments and offsets is unknown at this time.'' This answer clearly does not deny that any monies were owing to Marchini; the answer simply states that Durable was unable to determine the amount of sums owing at the time the answer was filed.

In Grouse Cr. Ranches v. Budget Financial Corp., 87 Nev. 419, 488 P.2d 917 (1971), the garnishee admitted holding property which might have belonged to the debtor but stated it did not know the debtor's interest in the property. We rejected a claim that the garnishor's failure to traverse such an answer amounted to an acceptance. We distinguished between a complete denial of the existence of an obligation and an assertion that the extent of the obligation due was unknown. *See* 87 Nev. at 430-31, 488 P.2d at 925. Our holding in *Grouse Cr. Ranches* is dispositive of the issue Durable raises on appeal. Accordingly, we reject this assignment of error.

Next, Durable contends that the district court erred in denying it the opportunity to present oral testimony or cross-examine witnesses at the priority hearing. Durable's argument appears to

be based on the assumption that the hearing was a trial. At the time the priority hearing was held, the time for "trial" was past. The district court had already granted the Trustee's motion for judgment on the pleadings subject to the court's determination of the priorities of the parties. The hearing in question was actually the result of a post-trial motion. Under the local rules of the Eighth Judicial District, factual contentions involved in the resolution of post-trial motions may be presented and heard upon affidavits, depositions, answers to interrogatories, and admissions on file. *See* EDCR 2.21(a). Whether oral testimony will be received at such a hearing, therefore, lies within the discretion of the district court. We conclude, however, based on the record presently before us and on the complexity of the factual issues that will be remanded to the district court, as discussed *infra,* that oral testimony is warranted in this case. Accordingly, on remand the district court shall allow the parties to present oral testimony and to cross-examine the witnesses if they so desire.

## DURABLE'S PAYMENTS TO MARCHINI'S MATERIALMEN

As previously noted, shortly after service of the writ of garnishment, Durable requested and received invoices from Van's and Las Vegas Plywood which detailed sums Marchini Construction owed the materialmen. When these invoices were delivered, Durable paid the materialmen the amounts requested (approximately $248,140) before answering the garnishment interrogatories. The materialmen, who had billed more than they were owed, then paid the excess over to Marchini. The district court held that Durable was entitled to set off the amounts actually owed to the materialmen by Marchini. However, the district court held Durable liable to the Trustees for the excess amounts that were "kicked back" to Marchini.

The Trustees now contend that the district court erred by failing to hold that the payments to the materialmen were improper in their entirety. According to the Trustees, Durable should not have been allowed to set off any amount paid to the materialmen after the Trustees served Durable with the writ of garnishment. In particular, the Trustees contend that because the materialmen failed to comply with NRS 108.2394, the materialmen did not have existing or valid lienable claims against Durable's property.[5] Therefore, the Trustees argue, the payments made by Durable to the materialmen over the writ of garnishment were improper. Durable counters that it had a statutory and a contractual right to offset the funds paid to the materialmen, and that the materialmen had priority under the mechanic's lien

---

[5]NRS 108.2394 has since been renumbered NRS 108.245.

statutes. In its cross-appeal, Durable also contends that the district court erred in finding that Durable could not set off the amounts "kicked back" to Marchini. Finally, both Durable and the Trustees contend that the district court erred in determining the amounts of the "kickbacks" made to Marchini by the materialmen.

We note initially that the district court concluded that Van's and Las Vegas Plywood substantially complied with the statutory requirements for the creation of mechanics liens on the construction projects. Although the Trustees argue that the district court erred in finding the materialmen had complied with the mechanics lien statutes, our review of the record indicates that the district court correctly determined that Van's and Las Vegas Plywood had substantially complied with the statutory requirements governing the creation of mechanics liens. *See* NRS 108.245 (formerly NRS 108.2394). Further, it is undisputed that Durable had actual notice of the potential lien claims. Such actual notice is dispositive of the issue now raised by the Trustees. As we noted in Las Vegas Plywood v. D & D Enterprises, 98 Nev. 378, 649 P.2d 1367 (1982), substantial compliance with the technical requirements of the lien statutes is sufficient to create a lien on the property where, as here, the owner of the property receives actual notice of the potential lien claim and is not prejudiced.

Of greater significance is the fact that Durable had both a statutory and a contractual right to set off the monies due the materialmen. Garnishment invests a plaintiff-garnishor with the right to satisfy his claim against a defendant with the debts due from a third-person, the garnishee, to the defendant. Valley Bank of Nev. v. Dobson, 97 Nev. 276, 629 P.2d 229 (1981). As against the garnishee, the garnishor occupies the same position as the defendant, and is subject to any defenses available to the garnishee against the defendant. *Id.* at 278, 629 P.2d at 229.

NRS 31.360 (emphasis added) provides a garnishee with a right of setoff as follows:

> Every garnishee shall be allowed *to retain or deduct* out of the property, effects or credits of the defendant in his hands all demands against the plaintiff and *all demands against the defendant of which he could have availed himself if he had not been summoned as garnishee, whether the same are at the time due or not,* and he shall be liable for the balance, only after all mutual demands between himself and plaintiff and defendant are adjusted, not including unliquidated damages for wrongs and injuries; but the verdict or finding as

well as the record of the judgment shall show in all cases against which party, and the amount thereof, any counterclaim shall be allowed, if any shall be allowed.

Pursuant to this statute, Durable had an absolute right to retain any monies which Durable was not required to pay to Marchini. Durable's subcontracts with Marchini expressly provided that Marchini was entitled to payment only after Durable had been furnished lien waivers from all materialmen. This contractual provision was intended to provide Durable the type of lien-free project demanded by modern commercial practice. Durable thus had the right to retain payment until lien waivers were provided, and Marchini was not entitled to payment until lien waivers were provided. Obviously, lien waivers could not be obtained until the materialmen were paid. It follows, therefore, that the Trustees had no right to any monies from Durable because no monies were due Marchini until after the materialmen were paid. Accordingly, the district court did not err in finding that Durable had a contractual right to pay the invoices submitted by the materialmen and to deduct the amounts paid the materialmen from the monies owed Marchini. *See* Eger Block & Redi-Mix Co. v. Wheeler, 207 So.2d 698 (Fla.Dist.Ct.App. 1968).

The district court did err, however, in determining that Durable was liable to the Trustees for the amounts paid to the materialmen in excess of the actual amounts owed by Marchini Construction. The materialmen provided invoices to Durable which Durable paid. There is no evidence in the record, nor did the district court find, that Durable had any knowledge or reason to know that the amounts billed by the materialmen were not actually owed to the materialmen.[6] Because Durable had an

---

[6] For example, the lien waiver given to Durable by Las Vegas Plywood states:

> I/We the undersigned have performed labor and/or furnished materials in connection with the work of improvements erected or being erected upon the property known as VILLA BONITA OESTE—UNIT #9-A. . . . and in order to induce full payment to be made to the undersigned for such labor and/or materials: I/We do hereby represent to DURABLE DEVELOPERS, INC. . . . that I/we have fully paid for all labor performed and/or materials furnished by the undersigned . . . for which *I/we . . . now claim payment; and in consideration of the payment to the undersigned of all* or a portion *of the amount set forth* on the *invoice(s)* of the undersigned number(s)\* *4071* dated\* *OCTOBER 3, 1980* receipt of which is hereby acknowledged, I/we hereby waive and relinquish all rights to claim a lien. . . ." (Emphasis added.)

Invoice #4701, which was incorporated by reference in the conditional lien waiver, stated the sum due to be $181,041.00. The lien waiver given to Durable by Van's is essentially similar.

absolute right to pay the invoices of the materialmen, Durable cannot now be held liable for sums misappropriated by the materialmen. Accordingly, we reverse that portion of the district court's judgment finding Durable liable to the Trustees in the amount of the "kickbacks" ($44,170) made by the materialmen to Marchini. This disposition makes it unnecessary to decide the question of whether the district court erred in determining the amounts of the "kickbacks."

## DURABLE'S PAYMENTS TO THE LAW FIRM

As indicated above, the $250,000 assignment between Marchini and the law firm was made in August of 1980. In September of 1980, Durable paid the law firm $48,233.11 pursuant to the assignment. On October 17, 1980, the Trustees served the writ of garnishment on Durable. After receiving service of the writ, Durable paid the law firm $136,775.96 pursuant to the assignment. Thus, the total paid to the law firm by Durable was $185,283.99.

At the post-judgment hearing, the district court found that $129,000 of the $250,000 assignment was given to satisfy the preexisting indebtedness of Marchini. The district court concluded that this portion was *exempt* from coverage under Article Nine of the Uniform Commercial Code because it was not intended to have an effect as security, because it was not made within the typical commercial financial setting, and because it constituted a "single account" within the meaning of NRS 104.9104(6). The court then found that $121,000 of the assignment was given to secure *future* advances by the law firm and that, therefore, this portion *was governed* by Article Nine of the UCC. Because the law firm did not file a financing statement prior to service of the writ of garnishment, the court concluded that the Trustees, as lien creditors, had priority over the firm's security interest. The district court entered a judgment against Durable in the amount of $56,009.07 ($185,009.07 minus $129,000), as the amount improperly paid the law firm after service of the writ.

The Trustees contend that they have priority over the entire $136,775.96 paid by Durable to the law firm after service of the writ of garnishment. First, the Trustees contend that the district court erred by failing to find Marchini's assignment to the law firm voidable as a fraudulent conveyance pursuant to NRS 112.050 and NRS 112.060. Specifically, the Trustees argue that the assignment was made while Marchini was insolvent and that it was not supported by fair consideration, because the amount of the assignment exceeded the preexisting indebtedness.

The district court found as a fact that the Trustees failed to show the assignment to the law firm rendered, or would render, Marchini insolvent. The district court then concluded as a matter of law that the Trustees had failed to present sufficient evidence that Marchini was insolvent at the time of the assignment, that the assignment rendered Marchini insolvent, or that Marchini made the assignment with an intent to hinder, delay or defraud its creditors. *See* NRS 112.080. The district court also concluded that Marchini's antecedent debt to the law firm, which the district court found to be a legitimate and enforceable debt, was fair consideration for the assignment. Our review of the record reveals substantial evidence to support these findings and conclusions of the district court. Therefore, they will not be set aside on appeal. *See* Folsom v. Woodburn, 100 Nev. 331, 683 P.2d 9 (1984) (where a district court, sitting without a jury, makes a determination based on conflicting evidence, that determination will not be disturbed on appeal as long as it is supported by substantial evidence).

Second, the Trustees contend that the entire assignment to the law firm is subject to the filing provisions of Article Nine, and that the district court erred in ruling that a portion ($129,000) of the assignment was exempt. Because the law firm did not perfect its interest in the funds held by Durable by filing a financing statement, the Trustees contend that, as lien creditors, they had priority over the law firm's unperfected interest. *See* NRS 104.9301(1)(b). The Trustees conclude, therefore, that they are entitled to judgment for the entire $136,778.96 paid by Durable to the law firm after service of the writ of garnishment.

The law firm maintains, however, that the entire assignment is excluded from the filing provisions of Article Nine as an absolute assignment of a single account in satisfaction of a preexisting indebtedness. Therefore, the law firm argues, it had priority over the funds received under the assignment because the assignment occurred prior to service of the writ of garnishment.

NRS 104.9102 sets forth the transactions covered by Article Nine. This statute provides that, unless otherwise excluded, Article Nine applies "[t]o any sale of accounts or chattel paper."[7]

---

[7]Specifically, NRS 104.9102(1) (emphasis added) provides:

    1. Except as otherwise provided in NRS 104.9104 on excluding transactions, this article applies:

    (a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangible, chattel papers or accounts; and also

    (b) *To any sale of accounts* or chattel paper.

According to the drafter's comments to this section, every assignment of an account receivable, whether intended for security or not, is included within the scope of Article Nine unless expressly excluded by some other provision. Only one relevant statutory exclusion exists. NRS 104.9104(6) provides that the transfer of a single account receivable is excluded from the scope of Article Nine. This statute provides in pertinent part:

This article does not apply:

. . .

6. To a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract *or a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting indebtedness.*

. . .

.(Emphasis added.) Therefore, if the assignment constitutes a transfer of a "single account" within the meaning of the above exception, the assignment is excluded in its entirety from the provisions of the UCC. If, on the other hand, more than one account is transferred, the entire assignment is governed by the provisions of Article Nine. There is no statutory authority for splitting the assignment and finding a portion of the transfer exempt from Article Nine and a portion of the same assignment subject to the provisions of Article Nine. Therefore, at the very least, the district court erred by dividing the assignment and treating it as partially covered and partially excluded by Article Nine.

The question of whether a "single account" was transferred by Marchini to the law firm was vigorously disputed by the parties. The Trustees argued that Marchini assigned his rights to payment under two distinct framing contracts.[8] The Trustees noted that the written assignment between Marchini and the law firm explicitly recognized the existence of two distinct framing contracts. Although the subcontracts between Durable and Marchini involved two residential housing projects, Marchini averred that he treated all his contracts with Durable as a "single account." The district court resolved this dispute in Marchini's favor, concluding that the assignment was of a single account. The district court viewed the subcontracts as Durable's "framing

---

[8]Under Article Nine, *see* NRS 104.9106, "account" is defined as "*any right* to payment for goods sold or leased or for services rendered. . . ." (Emphasis added.)

account with Marchini.'' This conclusion is supported by substantial evidence in the record and, therefore, we will not disturb it on appeal. *See* Folsom, v. Woodburn, *supra.* Accordingly, the entire transfer was outside the scope of Article Nine. Because the entire transfer was outside the scope of Article Nine, the validity of the transfer, and the priorities of the amounts due Marchini from Durable under the assignment, must be determined according to common law principles.

The general rule is that priority between an attachment or garnishment and an assignment of a chose in action depends on priority in time. *See* Saunders v. Adcock, 462 S.W.2d 219, 221 (Ark. 1971); Martinez v. Dixon, 710 P.2d 498, 500 (Colo. Ct.App. 1985); Higgs v. Amarillo Postal Employees Credit Union, 358 S.W.2d 761, 763 (Tex.Civ.App. 1962); Monegan v. Pacific Nat'l Bank of Washington, 556 P.2d 226, 231 (Wash.Ct. App. 1976). Therefore, the assignment in this case, which predated service of the writ of garnishment, has priority. Nevertheless, we conclude that the assignment has priority over the writ of garnishment only to the extent that the consideration given for the assignment represented a ''present advance or antecedent debt.'' *See* NRS 112.040;[9] *cf.* Edward L. Eyre & Co. v. Hirsch, 218 P.2d 888, 897 (Wash. 1950) (where bank sold warehouse receipts after service of writ of garnishment for an amount less than their value, bank was liable to garnishor for difference between the amount for which the receipts were sold and the value of the receipts).

In this case, it is uncontroverted that a portion of the assignment was given to secure possible advances that the law firm might make on behalf of Marchini in the future. The district court found that at the time the assignment was executed, $129,000 represented an antecedent debt owed by Marchini to the law firm. The district court also found that the remaining $121,000 represented security for future advances. The law firm alleges, however, that prior to the service of the writ of garnishment, it advanced funds to, and performed services for, Marchini in the

---

[9]NRS 112.040 (emphasis added) provides:

Fair consideration is given for property, or obligation,

1. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or *an antecedent debt is satisfied,* or

2. When such property or obligation is received in good faith *to secure a present advance or antecedent debt* in amount not disproportionately small as compared with the value of the property or obligation obtained.

amount of $203,000.[10] Although this figure is disputed by the Trustees, the law firm is entitled to priority over that portion of the assignment that represents funds actually advanced to, or on behalf of, Marchini prior to the service of the writ of garnishment.

The district court did not determine the amount of the antecedent debt Marchini owed to the law firm at the operative or relevant time, *i.e.*, the date of service of the writ of garnishment. *See* Walker v. Carolina Mills Lumber Co., Inc., 429 So.2d 1065, 1068 (Ala.Civ.App. 1983) (date of service of writ of garnishment becomes date on which priority among various claimants is determined); *cf.* Gambino v. Culp, 444 So.2d 730, 732 (La.Ct. App. 1984) (seizure in garnishment procedure is effective the moment of service of garnishment interrogatories). Therefore, we must remand this matter to the district court with instructions that it conduct an evidentiary hearing to determine the amount of the assignment that represented either present advances or antecedent debts owed to the law firm as of October 17, 1980, the date the Trustees served Durable with the writ of garnishment.

## THE REMAINING $80,000 RETAINED BY DURABLE AS PROCEEDS DUE MARCHINI

As previously discussed, after the payments to the law firm, Van's, and Las Vegas Plywood, Durable still retained $80,000 in proceeds due Marchini under the subcontracts. The district court awarded this $80,000 to the Trustees pursuant to the writ of garnishment. On appeal, Durable contends the district court erred in refusing to allow it to retain this sum to indemnify it against possible liabilities arising out of related claims filed by the Trustees and threatened by the SIIS.

At the time the writ of garnishment was served, Durable was potentially liable to the Trustees and to the SIIS for payments which Marchini had failed to make. As noted above, the first potential claim was the result of a second independent action against Durable filed by the Trustees based on Marchini's failure to pay employee fringe benefits in conjunction with work done by

---

[10]According to the law firm, it advanced funds to, or on behalf of, Marchini in the amount of $203,000 as follows: $109,000 was advanced as a loan to the Mondo Corporation and the loan was guaranteed by Marchini; $20,000 in legal services were performed at Marchini's request for Sam Calabrese; $50,000 was advanced to the Sterling Heights Partnership to cover its losses and Marchini guaranteed these amounts; $24,000 was advanced directly to Marchini as a loan. Of the above amounts, all were advanced prior to the date of the assignment of the $250,000 account, except the $24,000 direct loan to Marchini which was advanced after the date of the assignment but prior to the service of the writ of garnishment. The trustees dispute that any funds were actually advanced by the law firm, arguing that the amounts cited above represent "bogus" debts.

Marchini for Durable from 1976 through 1978 (District Court Case No. A201547). The Trustees alleged that Durable was liable for Marchini's failure to pay fringe benefits to the Trustees in the amount of $23,000. The second potential claim was a threatened lawsuit against Durable by the SIIS. The SIIS had notified Durable that Marchini had failed to pay insurance premiums required by the industrial insurance statutes. As the general contractor, Durable was potentially liable for these unpaid insurance premiums. *See* NRS 608.150. The SIIS eventually did file suit against Durable. The district court refused to allow Durable to retain the $80,000 to indemnify it against these potential claims because the amounts owed were then unliquidated. *See* NRS 31.360 (garnishee may not retain amounts that represent unliquidated damages for wrongs and injuries).

Durable moved the district court to consolidate the present action with the other action filed by the Trustees (Case No. A201547). The district court refused to do so. Pursuant to NRS 31.294, the district court should then have stayed this action pending the final judgment in the other action. NRS 31.294 (emphasis added) provides:

> Money, property, demands, debts, claims, choses in action and any other property which is subject to garnishment may be reached and subjected even though another action is pending thereon. *If the other action is not pending in the court from which the garnishment issues, the court, on proof by the garnishee of the pendency of the other action, must stay such proceedings against such garnishee until notified that a final judgment has been rendered.* Upon such notification the court shall make an appropriate order, according to the judgment, in favor of the defendant for the use of the plaintiff or in favor of the garnishee defendant. The judgment, if rendered against the garnishee, acquits him from all demands by the defendant for all money, property, goods, effects and credits paid, delivered and accounted for by the garnishee by force of such judgment.

Although none of the parties brought this statute to the attention of the district court, if the district court had stayed the garnishment proceedings below, the problem now raised by Durable would have been avoided.

Durable is entitled to assert any defense against the Trustees that Durable would have had against Marchini. *See* NRS 31.360. Had Marchini sued Durable on the subcontracts involved in the present case, Durable would undoubtedly have been able to offset the debts Marchini owed Durable from any recovery awarded to Marchini. Although the amounts for which Durable would

become liable as a result of Marchini's failure to pay insurance premiums and fringe benefits were uncertain at the time of the trial of this matter, those amounts have, at least partially if not totally, become liquidated during the pendency of this appeal. For example, the SIIS action has been resolved and Durable was required to pay insurance premiums on behalf of Marchini in the amount of $39,573.28. *See* SIIS v. Durable Developers, 102 Nev. 398, 724 P.2d 199 (1986). Because Durable has been required to expend monies on behalf of Marchini, under NRS 31.360, Durable is entitled to an offset against the $80,000 still in its possession. The record does not disclose the disposition of the second independent action filed by the Trustees. If Durable is required to pay any amount as a result of that action, Durable is also entitled to an offset for that amount.

Accordingly, we reverse that portion of the district court's judgment awarding the Trustees the $80,000 still in Durable's possession. We remand this portion of the case to the district court with instructions that it: (1) allow Durable an offset in the amount of $39,573.38, as discussed above; (2) determine the amount of any offset owed Durable as a result of the Trustees' second independent action; and (3) determine whether Durable is entitled to an offset against the remaining funds retained by Durable as a result of our remand discussed previously concerning the assignment of the single account to the law firm.

### THE AWARD OF ATTORNEY'S FEES TO THE TRUSTEES

Finally, Durable contends the district court erred by awarding $22,000 in attorney's fees to the Trustees and by refusing to award attorney's fees to Durable. Although the district court did not specify the statutory basis for its award of fees, NRS 31.340 provides in pertinent part:

> [I]f the verdict or finding is as favorable to the garnishee as his answer, he shall recover costs of the proceedings against the plaintiff, together with a reasonable attorney's fee, otherwise the plaintiff shall recover costs against the garnishee, together with a reasonable attorney's fee.

Durable's answer to the garnishment interrogatories states that "[s]ums may become due [to Marchini] but the amount, if any, after deducting assignments and offsets is unknown at this time." Durable contends that because the district court allowed certain offsets in Durable's favor, the verdict was as favorable to Durable as its answer. Therefore, Durable argues, the district court should have awarded attorney's fees to it rather than to the Trustees.

Because this case must be remanded as indicated above, we are

unable to determine at this time whether any party is entitled to an award of attorney's fees. Therefore, we reverse the award of attorney's fees in favor of the Trustees, and we remand this issue to the district court for consideration after all other issues of liability have been resolved. *See* NRS 31.340.

## CONCLUSION

We reverse those portions of the district court's amended judgment awarding the Trustees $180,179.07, we reverse the lower court's award of attorney's fees to the Trustees, and we affirm the district court's judgment in all other respects. We remand this case to the district court for further proceedings consistent with this opinion.