OPINION
By the Court,
Springer, C. J.:
This is an appeal from an order of the district court granting respondent’s petition for a writ of attachment and writ of garnishment. The Department of Motor Vehicles and Public Safety (“DMV”) levied administrative fines against Kirk Pittman, dba Credit Auto Sales, a used automobile dealer, and attempted to satisfy the fines from the dealer’s cash bond in the form of a certificate of deposit. At the same time, the dealer’s attorney, Eva Garcia-Mendoza, Chtd., attempted to garnish the dealer’s cash bond to satisfy a judgment for unpaid attorney’s fees. Eventually, the district court granted Garcia-Mendoza’s motion and ordered the director of the DMV to pay Garcia-Mendoza $44,354.85 from Pittman’s $50,000.00 cash bond.

The DMV’s interest in the bond

Prior to obtaining a license, a used car dealer must post a bond, or deposit in lieu of a bond, in the amount of $50,000.00 with *1189 the DMV. See generally NRS 482.345 and 482.346. Pursuant to NRS 482.345(5):
The bond must provide that any person injured by the action of the dealer, distributor, rebuilder, manufacturer, representative or salesman in violation of any provisions of this chapter may apply to the director [of the DMV], for good cause shown and after notice and opportunity for hearing, for compensation from the bond. The director may determine the amount of compensation and the person to whom it is to be paid. The surety shall then make the payment.
Similarly, pursuant to NRS 482.346(2), a deposit in lieu of a bond “may be disbursed by the director, for good cause shown and after notice and opportunity for hearing, in an amount determined by him to compensate a person injured by an action of the licensee . . . .” NRS 482.346 also sets forth specific circumstances in which a deposit in lieu of a bond may be “released” or “refunded.”
The DMV, as garnishee, contends that it has valid claims against Pittman and his salesman Mestas, arising out of the DMV’s enforcement actions, which it was entitled to offset prior to surrendering Pittman’s cash bond to Garcia-Mendoza as gar-nishor. Garcia-Mendoza contends, and the district court agreed, that, although the DMV may have had valid claims against Pittman individually, the DMV failed to follow the statutorily mandated procedures for executing on Pittman’s cash bond in satisfaction of its claims. Therefore, according to Garcia-Mendoza and the district court, the director of the DMV, as custodian of Pittman’s cash bond, never really had any claims to offset against Garcia-Mendoza’s garnishment of Pittman’s interest in the cash bond. We agree.
The DMV relies on NRS 31.360, which provides that, even after service of a proper writ of garnishment, the garnishee is entitled to offset any other demands against the judgment debtor’s property, including its own. The DMV also relies on Board of Trustees v. Durable Developers, 102 Nev. 401, 724 P.2d 736 (1986), wherein this court, relying on NRS 31.360, upheld such an offset after service of a proper writ of garnishment. This court stated:
Garnishment invests a plaintiff-garnishor with the right to satisfy his claim against a defendant with the debts due from a third-person, the garnishee, to the defendant. As against the garnishee, the garnishor occupies the same position as the defendant, and is subject to any defenses available to the garnishee against the defendant.
*1190 Id. at 410, 724 P.2d at 743 (citations omitted). Based upon the foregoing authorities, the DMV asserts its judgments against Pittman and Mesías, which it had obtained prior to service of Garcia-Mendoza’s earliest writ of attachment, as proper offsets. The DMV further contends that whether it made a proper claim on Pittman’s cash bond is not an issue in deciding whether the DMV is entitled to Pittman’s cash bond, so long as the DMV had some outstanding claims against Pittman.
We conclude that, until the DMV executes upon a cash bond in a manner authorized by NRS 482.345 and NRS 482.346, or itself garnishes a dealer’s interest in a cash bond, the DMV’s only “claim” to or interest in the cash bond is to see that it is preserved and distributed in the manner prescribed by the Legislature and the DMV’s own regulations. In other words, absent a valid claim on the cash bond itself, the DMV’s only defense against garnishment of Pittman’s cash bond is that the order to release the bond is inconsistent with the procedures set forth by the regulatory statutes creating the bonding requirement.[1]

The DMV’s withdrawal of funds from the cash bond account

Alternatively, the DMV contends that it properly executed on the cash bond, pursuant to the statutorily mandated procedures, by either “disbursing” or “releasing” the cash bond to itself. This contention is without merit. NRS 482.346(2) provides that a cash deposit in lieu of a bond:
[Mjay be disbursed by the director, for good cause shown and after notice and opportunity for hearing, in an amount determined by him to compensate a person injured by an action of the licensee, or released upon receipt of:
(a) A court order requiring the director to release all or a specified portion of the deposit; or
(b) A statement signed by the person or persons under whose name the deposit is made and acknowledged before *1191 any person authorized to take acknowledgments in this state, requesting the director to release the deposit, or a specified portion thereof, and stating the purpose for which the release is requested.
(Emphases added.) We conclude that the DMV cannot have properly “disbursed” Pittman’s cash bond to itself because payment of an administrative fine cannot reasonably be said to “compensate” the DMV for statutory violations, nor is the DMV “injured” by such violations. The bond requirement for automobile dealers was clearly intended to ensure compensation for defrauded consumers, not the DMV. In other words, under the plain meaning of the statute, administrative fines are not payable by way of a “disbursement” from a dealer’s cash bond.[2]
Moreover, the DMV’s invasion of Pittman’s cash bond cannot be construed as a “release,” as that term is used in the statute. The plain meaning of the term “release” in NRS 482.346(2)(b) is a release of the DMV’s interest in or control of a cash bond, not the dealer’s interest.[3] Finally, the DMV’s contention that the court in the Mestas case ordered the director to “release” the last remaining $20,000.00 of Pittman’s cash bond is simply not true. That order merely directed judgment against Mestas in the amount of $27,000.00 — it made no reference to Pittman’s cash bond at all.

The district court’s order

NRS 482.346(2)(a) provides that the director may release a dealer’s cash bond upon receipt of “[a] court order requiring the director to release all or a specified portion of the deposit.” As set forth above, the DMV’s various alleged claims did not render the district court’s issuance of such an order improper in this case. We have, however, considered whether, for other reasons, *1192 the district court may have exceeded its authority in ordering a release of Pittman’s cash bond.
Although the statutory scheme places no express restriction on when a court may order a release, we believe it to be self evident that such a release would be improper if it carried with it the danger that the underlying purpose of the bond requirement would be thwarted. For example, if release of the bond to a mere contractual claimant such as Garcia-Mendoza (who, like the DMV, is not in this case an intended beneficiary of the bond requirement) is likely to result in “injured persons” not being compensated, then release of the bond would be improper.
In the present case, the DMV was queried as to whether any automobile purchasers, injured by reliance upon fraudulent smog certificates provided by Credit Auto Sales, had made claims against Pittman’s cash bond. The district court specifically found that there were no claims outstanding against the $50,000.00 cash bond. However, at oral argument, the department conceded that it had not undertaken any substantial efforts to locate the auto purchasers defrauded by Credit Auto Sales or to inform them that money was available to compensate them for their deficient smog systems. We hope that the approximately $5,654.00, plus interest, remaining in the cash bond account will not be executed upon to satisfy the DMV’s administrative fines until the department has made a good faith effort to locate these people and to inform them of their right to make a claim against Pittman’s cash bond.
In conclusion, we emphasize to the DMV that its status as a would-be creditor of an automobile dealer’s victim compensation fund cannot take precedence over its statutory fiduciary duties in regard to management of the fund. When asserting its rights as a mere creditor, as it does in a case such as this, the department stands on the same basis as any other creditor who would make a claim on the statutorily created fund. As such, it must, as did the attorney claimants in this case, perfect and execute upon its claim consistent with the lawful procedures set forth in NRS 482.346. It cannot simply help itself to the money it controls for the benefit of others. Therefore, we affirm the judgment of the district court.
Shearing, J., concurs.

 The Honorable Justice Rose argues, in dissent, that the DMV had priority over Garcia-Mendoza because the DMV has a prior right to set-off and its claim was- prior in time. This is not the case for two reasons. First, although it is true that the DMV had an earlier claim against the dealer, the DMV did not have an earlier claim against the bond. In fact, the DMV has never made a proper claim against the bond, because, as discussed below, the DMV did not attempt to follow the statutory procedures specifically set forth for making such a claim. Instead, in an exercise of power unsupported by authority, the DMV simply helped itself to the money. Second, the DMV’s common law right to set-off cannot take precedence over its statutory duty to pay out on the bond in the manner established by the legislature. In this case, Garcia-Mendoza followed the statutory procedures for executing upon the bond; the DMV did not. In short, Garcia-Mendoza perfected her claim first and is entitled to priority to the money.

 We also note that a dealer’s bond and, presumably, a cash deposit in lieu of a bond, is only available to satisfy a claim of fraud or a claim arising out of a violation of the provisions of Chapter 482 of NRS. See NRS 482.345(5) and NRS 482.345(6). The DMV has not been damaged by fraud. Moreover, a close reading of the judgments against Pittman and Mestas reveals that each was fined for violations of the engine emission control statutes in Chapter 445B of NRS and administrative regulations promulgated thereunder; the purported violations of Chapter 482 of NRS in the district court’s judgments reference licensing provisions, not proscribed practices, and thus, are not, themselves, violations.

 Such a release would be proper, for example, if the DMV concluded, pursuant to NRS 482.345(1), that the amount of the dealer’s bond should be reduced because he had conducted his business satisfactorily over the past five years.