**133 Nev., Advance Opinion 25**

IN THE SUPREME COURT OF THE STATE OF NEVADA

JOHN ILIESCU, JR., INDIVIDUALLY;
AND JOHN ILIESCU, JR., AND
SONNIA ILIESCU, AS TRUSTEES OF
THE JOHN ILIESCU, JR., AND
SONNIA ILIESCU 1992 FAMILY
TRUST AGREEMENT,
Appellants,
vs.
MARK B. STEPPAN,
Respondent.

No. 68346



FILED

MAY 25 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order for foreclosure of a mechanic's lien and an order denying a motion for NRCP 60(b) relief. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

*Reversed and remanded.*

Albright, Stoddard, Warnick & Albright and D. Chris Albright and G. Mark Albright, Las Vegas,
for Appellants.

Hoy Chrissinger Kimmel Vallas, PC, and Michael D. Hoy, Reno,
for Respondent.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

NRS 108.245(1) requires mechanic's and materialmen's lien claimants to deliver a written notice of right to lien to the owner of the

property after they first perform work on or provide material to a project. In *Board of Trustees of the Vacation Trust Carpenters Local No. 1780 v. Durable Developers, Inc.*, 102 Nev. 401, 410, 724 P.2d 736, 743 (1986), this court held that "substantial compliance with the technical requirements of the lien statutes is sufficient to create a lien on the property where . . . the owner of the property receives actual notice of the potential lien claim and is not prejudiced." And we reaffirmed this holding in *Fondren v. K/L Complex Ltd.*, 106 Nev. 705, 710, 800 P.2d 719, 721-22 (1990) ("The failure to serve the pre-lien notice does not invalidate a mechanics' or materialmen's lien where the owner received actual notice."). In this appeal, we are asked to determine whether the actual notice exception should be extended to offsite work and services performed by an architect for a prospective buyer of the property. Because we hold that the actual notice exception does not apply to such offsite work and services when no onsite work has been performed on the property, we reverse.

## FACTS AND PROCEDURAL HISTORY

In July 2005, appellants John Iliescu, Jr., individually, and Sonnia Iliescu and John Iliescu, Jr., as trustees of the John Iliescu, Jr., and Sonnia Iliescu 1992 Family Trust Agreement (collectively, Iliescu) entered into a Land Purchase Agreement to sell four unimproved parcels in downtown Reno to Consolidated Pacific Development (CPD) for development of a high-rise, mixed-use project to be known as Wingfield Towers. The original agreement was amended several times and, as finally amended, entitled Iliescu to over $7 million, a condominium in the development, and several other inducements.

During escrow, CPD assigned the Land Purchase Agreement to an affiliate, BSC Investments, LLC (BSC). BSC negotiated with a California architectural firm, Fisher Friedman Associates, to design the

SUPREME COURT
OF
NEVADA

(O) 1947A

2

Wingfield Towers. Respondent Mark Steppan, a Fisher Friedman employee who is an architect licensed in Nevada, served as the architect of record for Fisher Friedman.

In October 2005, Steppan sent an initial proposal to BSC that outlined design services and compensation equal to 5.75 percent of the total construction costs, which were estimated to be $180 million. In the interest of beginning design work, Steppan and BSC entered into an initial "stop-gap" agreement in November 2005 under which Steppan would bill hourly until an American Institute of Architects (AIA) agreement could be later signed. The AIA agreement between Steppan and BSC was signed in April 2006. The parties agreed that the final design contract would have an effective date of October 31, 2005, when Steppan began work.

The AIA agreement provided for progressive billings based on a percentage of completion of five phases of the design work, including 20 percent of the total fee upon completion of the "schematic design" phase. Steppan completed the schematic design phase, and Wingfield Towers was able to secure the required entitlements and project approval from the Reno Planning Commission and the Reno City Council. BSC did not pay Steppan for his services under the contract, and Steppan recorded a mechanic's lien against Iliescu's property on November 7, 2006. Steppan did not provide Iliescu with a pre-lien notice.

Financing for the Wingfield Towers project was never obtained, escrow never closed, and no onsite improvements were ever performed on the property. When the escrow was canceled, Iliescu's unimproved property was subject to Steppan's multimillion dollar lien claim for the unpaid invoices submitted to BSC.

Iliescu applied to the district court for a release of Steppan's mechanic's lien, alleging that Steppan had failed to provide the required pre-lien notice before recording his lien. Steppan then filed a complaint to foreclose the lien. The two cases were consolidated, and Iliescu filed a motion for partial summary judgment on the pre-lien notice issue. Steppan filed a cross-motion for partial summary judgment, arguing that, although he failed to give the pre-lien notice required under NRS 108.245, such notice was not required under the "actual notice" exception recognized by this court in *Fondren v. K/L Complex Ltd.*, 106 Nev. 705, 710, 800 P.2d 719, 721-22 (1990). Iliescu argued that he did not have the notice required under *Fondren*'s actual notice exception.

The district court denied Iliescu's motion but granted Steppan's motion, finding that no pre-lien notice was required because Iliescu had viewed the architectural drawings and attended meetings where the design team presented the drawings and thus had actual notice of the claim. The court found that even though Iliescu alleged he did not know the identity of the architects who were working on the project, he had actual knowledge that Steppan and Fisher Friedman were performing architectural services on the project.

About 18 months after the district court granted Steppan's motion on the pre-lien notice issue and while the matter was still pending in the district court, this court published its opinion in *Hardy Companies, Inc. v. SNMARK, LLC*, 126 Nev. 528, 245 P.3d 1149 (2010). *Hardy* clarified that a lien claimant cannot invoke the actual notice exception to NRS 108.245 unless the property owner (1) has actual notice of the construction on his property, and (2) knows the lien claimant's identity. *Id.* at 542, 245 P.3d at 1158.

Although the parties attempted to once again raise pre-lien notice issues after *Hardy* was published, the district court refused to revisit the issue. Following a bench trial on the consolidated cases, the district court entered its findings of fact, conclusions of law, and decision and, citing to both *Fondren* and *Hardy*, concluded that Steppan was entitled to a mechanic's lien. The district court further concluded that despite Steppan's failure to provide a pre-lien notice, none was required because Iliescu had actual knowledge; and it thus entered an order foreclosing Steppan's mechanic's lien. This appeal followed.

*DISCUSSION*

On appeal, the parties disagree about whether Steppan substantially complied with the mechanic's lien statutes by showing that Iliescu had actual knowledge of Steppan's work and identity. Iliescu denies having actual knowledge of Steppan's work and identity, and, in advancing his argument, asks this court to clarify whether the actual notice exception to the mechanic's lien statutes we articulated in *Fondren* applies to offsite work. He urges this court to hold that the exception does not apply to offsite work when no work has been performed on the property. Iliescu further argues that even though the district court erred in finding that he had actual knowledge of Steppan's work and identity, the court did not determine exactly when he first had that knowledge; thus, there is no way to tell how much, if any, of Steppan's work would be lienable pursuant to NRS 108.245(6). Steppan argues that the actual notice exception applies equally to onsite and offsite work and that the district court made adequate and supported findings.

*Standard of review*

"This court reviews . . . the district court's legal conclusions de novo." *I. Cox Constr. Co. v. CH2 Invs., LLC*, 129 Nev. 139, 142, 296 P.3d

1202, 1203 (2013). "This court will not disturb the district court's factual determinations if substantial evidence supports those determinations." *J.D. Constr., Inc. v. IBEX Int'l Grp., LLC*, 126 Nev. 366, 380, 240 P.3d 1033, 1043 (2010).

*Pre-lien notice under NRS 108.245*

Under NRS 108.245(1),[1] every lien claimant for a mechanic's or materialmen's lien "shall, at any time after the first delivery of material or performance of work or services under a contract, deliver" a notice of right to lien to the owner of the property. No lien for materials or labor can be perfected or enforced unless the claimant gives the property owner the required notice. NRS 108.245(3). Finally, a lien claimant "who contracts directly with an owner or sells materials directly to an owner is not required to give notice pursuant to" NRS 108.245.[2] NRS 108.245(5).

Despite the mandatory language of NRS Chapter 108, "[t]his court has repeatedly held that the mechanic's lien statutes are remedial in

---

[1]The United States District Court for the District of Nevada has recently ruled that a 2015 bill amending NRS 108.245, among other statutes unrelated to Nevada's mechanic's lien statutes, was non-severable and preempted. *Bd. of Trs. of the Glazing Health & Welfare Tr. v. Chambers*, 168 F. Supp. 3d 1320, 1325 (D. Nev. 2016); *see* S.B. 223, 78th Leg. (Nev. 2015); *but see Blanton v. N. Las Vegas Mun. Court*, 103 Nev. 623, 633, 748 P.2d 494, 500 (1987) (providing that Nevada courts are not bound by federal district court decisions). However, the mechanic's lien in this case was filed before that bill became effective. 2015 Nev. Stat., ch. 345, § 4, at 1932-33. Thus, this case is decided under the prior version of NRS 108.245 as it existed in 2005.

[2]It is undisputed that Steppan did not contract directly with Iliescu. Thus, our analysis of the actual notice exception to NRS 108.245(1) is limited to situations where, as here, the lien claimant does not contract directly with the owner.

character and should be liberally construed; that substantial compliance with the statutory requirements is sufficient to perfect the lien if the property owner is not prejudiced." *Las Vegas Plywood & Lumber, Inc. v. D & D Enters.*, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982). However, "[f]ailure to either fully or substantially comply with the mechanic's lien statute will render a mechanic's lien invalid as a matter of law." *Hardy*, 126 Nev. at 536, 245 P.3d at 1155.

We have previously determined that substantial compliance with NRS 108.245's pre-lien notice requirements has occurred when "the owner of the property receives actual notice of the potential lien claim and is not prejudiced." *Durable Developers*, 102 Nev. at 410, 724 P.2d at 743. This principle was reaffirmed in *Fondren*. 106 Nev. at 709, 800 P.2d at 721 (concluding that substantial compliance with the pre-lien notice requirements occurred because the property owner "had actual knowledge of the construction on her property"); *see also Hardy*, 126 Nev. at 535, 245 P.3d at 1154 (recognizing that "*Fondren* is still good law").

However, we have not previously addressed whether the actual notice exception applies to offsite work and services performed by an architect hired by a prospective buyer when no onsite work has been performed on the property. Steppan argues that because an architect who has not contracted directly with the property owner can lien for offsite work, the actual notice exception must apply. Iliescu argues that the actual notice exception does not apply to such offsite work when that work has not been incorporated into the property. We agree with Iliescu.

*The actual notice exception does not extend to offsite work when no onsite work has been performed on the property*

In *Fondren*, this court determined that Fondren, the property owner,

SUPREME COURT
OF
NEVADA

(O) 1947A

had actual knowledge of the construction *on her property*. It was understood by both Fondren and [the lien claimant] that substantial remodeling would be required when the lease was negotiated. Additionally, Fondren's attorney regularly inspected the progress of the remodeling efforts. These inspections were on behalf of Fondren. Fondren could easily have protected herself by filing a notice of non-responsibility. She had actual knowledge of the work being performed *on her property*.

106 Nev. at 709, 800 P.2d at 721 (citation omitted) (emphasis added). We also made clear that a predominant purpose for the "notice requirement [in NRS 108.245] is to provide the owner with knowledge that work and materials are being *incorporated into the property*." *Id.* at 710, 800 P.2d at 721 (emphasis added).

Similarly, the property owner in *Hardy* "regularly inspected *the project site*." 126 Nev. at 540, 245 P.3d at 1157 (emphasis added). Indeed, we explicitly stated that "[a]ctual knowledge may be found where the owner has supervised work by the third party, reviewed billing statements from the third party, or any other means that would make the owner aware that the third-party claimant was involved with *work performed on its property*." *Id.* at 542, 245 P.3d at 1158 (emphasis added). We further explained that NRS 108.245 "protect[s] owners from hidden claims and . . . [t]his purpose would be frustrated if mere knowledge of construction is sufficient to invoke the actual knowledge exception against an owner by any contractor. Otherwise, the exception would swallow the rule." *Id.* at 542, 245 P.3d at 1159.

This rationale equally pertains to offsite architectural work performed pursuant to an agreement with a prospective buyer when there is no indication that onsite work has begun on the property, and no

showing has been made that the offsite architectural work has benefited the owner or improved its property. As this court has consistently held, a lien claimant has not substantially complied with the mechanic's lien statutes when the property owner is prejudiced by the absence of strict compliance. *Las Vegas Plywood & Lumber*, 98 Nev. at 380, 649 P.2d at 1368; *Durable Developers*, 102 Nev. at 410, 724 P.2d at 743. As the *Hardy* court recognized, to conclude otherwise would frustrate the purpose of NRS 108.245, and the actual notice exception would swallow the rule. 126 Nev. at 542, 245 P.3d at 1159.

A property owner may be prejudiced by a lien claim from an architect for a prospective buyer who has failed to provide the pre-lien notice in at least two ways under Nevada's statutory scheme. First, without a showing that the architectural work has improved the property, the property owner assumes the risk for payment of a prospective buyer's architectural services for a project that may never be constructed on the property. Other jurisdictions have recognized that mechanics' liens for offsite architectural services when no work has been incorporated into the property pose a substantial risk of prejudice to property owners. *See generally* Kimberly C. Simmons, Annotation, *Architect's Services as Within Mechanics' Lien Statute*, 31 A.L.R.5th 664, Art. II § 4(b) (1995). For example, in *Kenneth D. Collins Agency v. Hagerott*, the Supreme Court of Montana upheld a lower court's decision refusing to allow an architect to foreclose on a mechanic's lien. 684 P.2d 487, 490 (1984). There, the court decided that, notwithstanding Montana law allowing architects to lien for architectural work and services, the architect could not foreclose on his lien because he did not "provide[ ] services that contributed to structural improvement and, thus, enhancement of the property." *Id.*

Second, although NRS 108.234 generally provides that an owner with knowledge of an "improvement constructed, altered or repaired upon property" is responsible for liens on its property, NRS 108.234(1), a disinterested owner may avoid responsibility for a lien if he or she gives a notice of non-responsibility after he or she "first obtains knowledge of the construction, alteration or repair, or the intended construction, alteration or repair," NRS 108.234(2). "Disinterested owner" is defined as a property owner who "[d]oes not personally or through an agent or representative, directly or indirectly, contract for or cause a work of improvement, or any portion thereof, to be constructed, altered or repaired upon the property or an improvement of the owner."[3] NRS 108.234(7)(b). In this case, Iliescu is not a disinterested owner as he indirectly caused architectural work to be performed pursuant to a contract with a prospective buyer.

While we have recognized in a lease context that the "knowledge of . . . intended construction" language is satisfied when the owner leases property with terms requiring the lessee to make all necessary repairs and improvements, we have only determined as such when the agreement was actually completed. *See Gould v. Wise*, 18 Nev. 253, 259, 3 P. 30, 31 (1884). Unlike a completed lease agreement, the agreement between Iliescu and BSC was contingent upon completion of the purchase of the property. Because Iliescu was not a disinterested owner, and the agreement was contingent upon completion of the purchase of the property, Iliescu was unable to give a notice of non-

---

[3]A "disinterested owner" must also not have recorded a notice of waiver pursuant to NRS 108.2405. NRS 108.234(7)(a).

responsibility to protect himself from mechanics' liens for offsite architectural work performed pursuant to a contract with the prospective buyer. Were we to apply the actual notice exception in these circumstances, a notice of non-responsibility may not protect property owners from costs incurred by prospective buyers when there has been no enhancement or improvement to the property.

In furtherance of the protections for property owners contemplated in NRS 108.245, we decline to extend the actual notice exception to the circumstances in this case. We thus conclude that the actual notice exception does not extend to offsite architectural work performed pursuant to an agreement with a prospective buyer when no onsite work of improvement has been performed on the property.

It does not appear from the record before us that any onsite work had begun on Iliescu's property at the time Steppan recorded his mechanic's lien for the offsite work and services he performed. And the record fails to reveal any benefit or improvement to Iliescu's property resulting from the architectural services Steppan provided. As such, the actual notice exception does not apply. Because the actual notice exception does not apply and there is no dispute that Steppan did not otherwise provide Iliescu with the required pre-lien notice, we conclude that the district court erroneously found that Steppan had substantially complied with NRS 108.245's pre-lien notice requirements.[4]

---

[4]Based on our conclusion that the actual notice exception does not apply in this case, we do not reach Iliescu's argument regarding the applicability of NRS 108.245(6) when the actual notice exception does apply. Similarly, as our conclusion on the actual notice issue is dispositive, we decline to reach the parties' remaining arguments on appeal.

Accordingly, we reverse the district court's order foreclosing Steppan's mechanic's lien and remand this matter to the district court for it to enter judgment in favor of Iliescu.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Stiglich