[No. 1288.]

## THE STATE OF NEVADA, ex rel. J. F. HALLOCK, STATE CONTROLLER, Relator, *v.* H. DONNELLY, COUNTY TREASURER OF EUREKA COUNTY, Respondent.

1. Constitutional Law—Taxation—Collection of Poll-taxes—Payment of Commission—Statutes Construed.—The act providing for the payment of a commission by the state of ten per cent. of all poll-taxes collected to the county, (Stat. 1885, 62) does not violate Art. 2, Sec. 7, providing that one-half of the poll-tax collected shall be paid to the state, and one-half to the county; the commission being an allowance for the expenses of collection, and the state being liable for its share.

Idem—Payment of Salaries by State—Statute—Repeal.—The act providing that for the services rendered under the revenue act by the county officers the state shall pay such proportion of their salaries as the state tax bears to the county tax, allowing such payment in addition to the commission already given by the act of March 5, (see Stat, 1885, 85, Sec. 21) is not repugnant to and does not repeal the latter act; there being no provision in the former that counties shall receive no other compensation than is therein provided.

Application for *mandamus.*

The facts are stated in the opinion.

*J. F. Alexander, Attorney-General,* for Relator.

*R. M. Beatty,* for Respondent.

By the Court, Leonard, C. J.:

Prior to respondent's semi-annual settlement with relator, June 11, 1888, the assessor of Eureka county collected 138 poll-taxes of three dollars each; in all four hundred and fourteen dollars. Of this amount relator demands one-half, two hundred and seven dollars, for the state; while respondent claims that it is his official right and duty to retain for Eureka county ten per cent. of the whole amount, to wit, forty one dollars and forty cents, and that of the balance the state is entitled to receive one-half, to wit, one hundred and eighty-six dollars and thirty cents. The amount last stated has been paid to the state, and this proceeding is instituted to compel respondent to pay into the state treasury the balance claimed by relator, to

wit, twenty dollars and seventy cents.  To sustain his claim respondent relies upon the statute of March 5, 1885, which is as follows:  " On all moneys collected from personal property tax, poll-tax and the tax on the proceeds of mines, by the several county assessors in this state, there shall be reserved and paid into the county treasury, for the benefit of the ·general fund of their respective counties, by said county assessor, the following percentage commissions:  *First,* on the gross amount of collections from personal property tax, six per cent.; *second,* on the gross amount of collections from poll-tax, ten per cent.; *third,* on the gross amount of collections from the tax on the proceeds of mines, three per cent." (Stat. 1885, 62.)  Against respondent's claim relator urges, first, that the part of the statute quoted which allows counties to reserve 10 per cent. of the poll-taxes collected by the assessor for the benefit of the general fund is unconstitutional.  The constitution provides that, of poll-taxes collected, one-half shall be applied for state, and one half for county purposes. (Art. 2, Sec. 7.)  Under this constitutional provision the state has a half interest in all poll taxes collected, but counties are equally entitled to the other half.  There are, necessarily, expenses incident to collection, of which it is just that the state should bear one-half and the counties the same.  Before assessors received salaries they were allowed ten per cent. of all poll-taxes collected by them; that is to say, the state paid ten per cent. on its moiety for collection, and each county did the same.  It would hardly be claimed that under the fee system the state failed to receive one-half, although ten per cent. of its portion was then, as now, paid for collection.  The percentage commission allowed for collection was applied for state purposes, as much as was the ninety per cent. actually paid into the state treasury.  The legislature placed the correct construction upon this constitutional provision, when it provided that " of the moneys collected as poll-tax, * * * after all the expenses of collection are paid, fifty per cent. shall be paid into the county treasury for county purposes, and the remaining fifty per cent. shall be paid in for state purposes." (Gen. Stat. 1128.)  It is incumbent upon the legislature to establish the method of collection, and to fix the compensation therefor.  The power is with the legislature, and presumably it has been and will be properly exercised.

Admitting the constitutionality of the statute of March 5, 1885, it is next claimed by relator that under the constitution one-half of all poll-taxes must be paid to the state, less one-half the expenses of collection; that such expenses are provided for and allowed by the twenty-first section of the statute of March 11, 1885; that the latter statute, being the latest, is the controling one, and prescribes, and was intended to prescribe, the only compensation to counties for the collection of poll-taxes. In a word, it is claimed that the statute of March 5th, in respect to compensation for the collection of poll-taxes by the assessor, was repealed by the twenty-first section of the statute of March 11th, which reads as follows: "The state of Nevada shall allow the several counties herein named, for the services rendered under the revenue act by the auditor, assessor, and treasurer of each county, a sum which shall be the proportion of the state tax to the whole tax levied by the county on the basis of the salaries allowed by the act, including the compensation allowed for deputies by the commissioners. These allowances shall be made at the time of the semi-annual settlement provided by law, upon vouchers furnished the county treasurer by the board of county commissioners of each county." The twenty-third section repeals all acts and parts of acts in conflict with said act. Was the act of March 5th repealed by that of March 11th? Certainly it was not repealed in terms. If a repeal was effected it was by implication, and because the later statute is repugnant to the earlier one. May not both stand together, and remain in force? The statutes in question, having been passed at the same session, and being *in pari materia*, the well-established rule is that they must be construed together as one statute. (*Board of Com'rs.* v. *Cutler*, 6 Ind. 354; *McMahon* v. *Cincinnati R. R. Co.*, 5 Port. (Ind.) 415; *Cain* v. *State*, 20 Tex. 358; *Ranoul* v. *Griffie*, 3 Md. 60; *Cannon* v. *Vaughan*, 12 Tex. 402; *Goddard* v. *Boston*, 20 Pick. 410; *Brown* v. *Commissioners*, 21 Pa. St. 42; *United States* v. *Tynen*, 11 Wall. 92; *United States* v. *Claflin*, 97 U. S. 551; *Bowen* v. *Lease*, 5 Hill, 225; *Dodge* v. *Gridley*, 10 Ohio, 173.) "If there be two affirmative statutes upon the same subject, the one does not repeal the other, if both may consist together; and we ought to seek for such a construction as will reconcile them together." (*Warder* v. *Arell*, 2 Wash. (Va.) 283; 1 Am. Dec. 488.) "When two statutes are so flatly repugnant that both cannot be executed, and we are obliged to choose between

them, the later is always deemed a repeal of the earlier. * * * But whenever two acts can be made to stand together, it is the duty of the judge to give both of them full effect. Even when they are seemingly repugnant, they must, if possible, have such a construction that one may not be a repeal of the other, unless the later one contains negative words, or the intention is made manifest by some intelligible form of expression." (*Brown* v. *Commissioners*, 21 Pa. St. 42.) "The presumption is always against the intention to repeal where express terms are not used. Hence the rule, as laid down by Chief Justice Marshall, that a repeal by implication ought not to be presumed, unless from the repugnance of the provisions the inference be necessary and unavoidable; * * * and the like rule by Judge Story, who, in considering whether a later statute repeals a former one, says that the inquiry is whether it (the former statute) is repealed by necessary implication. We say, by necessary implication, for it is not sufficient to establish that subsequent laws cover some, or even all, of the cases provided for by it; for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnancy between the provisions of the new laws and those of the old; and even then, the old law is repealed by implication only *pro tanto* to the extent of the repugnancy." (*Hogan* v. *Guigon*, 29 Grat. 709. And see *Thorpe* v. *Schooling*, 7 Nev. 17.)

In this case there are two affirmative statutes allowing counties certain compensation for services performed for the state in carrying out the provisions of the revenue law. One was passed six days before the other. The first allows each county in the state certain percentage commissions on all moneys collected by the assessor upon personal property tax, poll-tax, and the tax on the proceeds of mines. The last provides that "for the services rendered under the revenue act by the auditor, assessor and treasurer of each county," the state shall pay such proportion of the salaries of said officers, and of the amounts allowed their deputies, as the state tax on real and personal property bears to the entire county and state tax. That is to say, if the state tax is ninety cents and a county tax is two dollars and ten cents, making in all three dollars, the state shall pay nine-thirtieths of the salaries of the officers named and the county twenty-one thirtieths. If the two statutes under considera-

tion be construed as one for the purposes of this case,—
in other words, if they be construed as though the earlier
had been embodied in the later,—it seems plain that the legisla-
tive intent must have been to allow counties the proportion of
the officers' salaries mentioned in the last act, in addition to
the percentage commissions allowed in the first.     Besides, there
is no positive repugnancy between the two acts.     It is true,
section 21 provides that the state shall allow the counties
named in the act—of which Eureka is one—a certain sum "for
the services rendered under the revenue act by the auditor,
assessor and treasurer;" and it is true that the collection of
poll-taxes is required by the revenue law.     If the language of
section 21 had been that the allowance was made, "for ser-
vices," instead of "for the services," there would have
been no semblance of repugnancy.     But it is not declared
that this is an allowance for all the services of the auditor,
assessor and treasurer, or that the counties shall receive no
other compensation for services rendered under the revenue
act for the benefit of the state.     On the contrary, it is
provided in the first section that the county officers, whose
compensations are fixed by the act, "shall receive the following
compensations, . which shall be in full for all services and all
*ex officio* services required by law." If it was intended to re-
peal a law passed six days before, granting important benefits
to counties, that intention ought to have been, and we think
would have been manifested with as much particularity and
certainty as was shown in the case of county officers.     Com-
menting upon the maxim, *leges posteriores priores contrarias
abrogant,* in *Easton Bank* v. *Commonwealth,* 10 Pa. St. 448, the
court said:   "The maxim is subject to the restriction that an an-
cient statute will be impliedly repealed by a more modern one only
when the latter is couched in negative terms, or when the mat-
ter is so clearly repugnant that it necessarily implies a negative;
for implied repeals are not favored by law.   *   *   *   Where
both acts are merely affirmative, and the substance such that
both may stand together, both shall have a concurrent efficacy.
*   *   *   In our case it is to be observed the posterior statute
contains no negative words.   It ordains that the tax shall be paid
after May, 1887, but it does not say it shall not be paid be-
fore that period.   It is therefore not clearly repugnant with the
first act, which provides for an earlier payment, and no more.

They are both merely affirmative laws, and may both stand together, having an operation during different periods." In carrying out the provisions of the revenue law, in part for the benefit of the state, counties are compelled to bear other expenses besides paying the salaries of assessors, auditors, and treasurers. The district attorneys, county commissioners, and county clerks all perform important services for the benefit of the state, for which the statute makes no specific allowance. For years before the adoption of the salary system the state paid its proportion of the expenses attending the offices of assessor, auditor and treasurer, as fixed by the legislature, and in addition, its proportion of the percentage commissions allowed the assessor upon poll-taxes, personal property taxes, and the taxes on the proceeds of mines collected by him, just as it is now required to do under the statutes in question of March 5 and March 11, 1885. Whether the amounts paid by the state under the old system were more or less than those allowed under the new, we are unable to say nor does it matter for the purposes of this opinion. As before stated, it was the duty of the legislature to adjust these matters equitably between the state and counties, and the presumption is that it did so. It is plain to our minds that the legislature did not intend to complete the adjustment by the act of March 5th, and we cannot say that by the act of March 11th it intended to declare that the entire compensation to counties for the assessment and collection of the state's proportion of taxes from all sources, including poll, should be merely that stated in section 21 of the statute of March 11, 1885. We should be compelled to come to the conclusion last stated, if our opinion was that the act of March 5th was repealed by that of March 11th. If the latter act repealed any portion of the former, it repealed the entire law. Our opinion is that there is no such repugnancy between the two statutes in question, if indeed there is any, as permits the conclusion that a repeal of the earlier statute was effected or intended. There is nothing to hinder the enforcement of both. If counties receive too much from the state, the legislature can correct the error *Mandamus* denied.