HARDY COMPANIES, INC., DBA HARDY PAINTING AND DRYWALL, A NEVADA CORPORATION; AND W.E. O'NEIL CONSTRUCTION CO. OF CALIFORNIA, A DELAWARE CORPORATION, APPELLANTS, v. SNMARK, LLC, A NEVADA LIMITED LIABILITY COMPANY, RESPONDENT.

No. 52758

December 16, 2010 245 P.3d 1149

*Lewis & Roca LLP* and *Daniel F. Polsenberg* and *Dan R. Waite*, Las Vegas, for Appellant W.E. O'Neil Construction Company of California.

*Reynolds & Associates* and *Ronald H. Reynolds*, Las Vegas, for Appellant Hardy Companies, Inc.

*Fennemore Craig, P.C.*, and *David W. Dachelet*, Las Vegas, for Respondent.

## OPINION

By the Court, DOUGLAS, J.:

Appellant W.E. O'Neil Construction Company of California (O'Neil) and its subcontractor, appellant Hardy Companies, Inc. (Hardy), sought to foreclose mechanics' liens on property owned by respondent SNMARK, LLC. O'Neil had contracted with ECT Holding, LLC's lessee, Wickes Furniture, to build out a large commercial space in a shopping center owned by ECT. A month later, ECT transferred the shopping center and lease to SNMARK. Neither O'Neil nor Hardy served a notice of right to lien (pre-lien notice) on either ECT or its successor SNMARK, pursuant to NRS 108.245; however, SNMARK knew about and was involved with the construction.

After construction was completed, O'Neil and Hardy filed mechanics' liens on SNMARK's property and then sought to foreclose on those liens. The district court determined that none of the lien claimants had served SNMARK with a pre-lien notice, as re-

quired by NRS 108.245, and therefore, granted SNMARK's motion to expunge the mechanics' liens and for summary judgment.

In this appeal, we address whether recent legislative amendments to the mechanic's lien law abrogated or overruled *Fondren v. K/L Complex, Ltd.*, 106 Nev. 705, 800 P.2d 719 (1990), and Nevada's substantial compliance doctrine. We conclude that *Fondren* and the substantial compliance doctine are still good law. An owner must have either pre-lien notice or actual knowledge as described in *Fondren* in order to prevail in a lien action against that owner. Additionally, strict compliance with the mechanic's lien statutes is not required to perfect a lien. However, while substantial compliance is still the law in Nevada, substantial compliance requires actual notice to the owner and under the facts of this case, mere notice to the tenant is not sufficient.

Therefore, the district court erred in granting summary judgment against O'Neil and Hardy because pre-lien notice was unnecessary if SNMARK had actual knowledge of O'Neil's or Hardy's work. The question of whether SNMARK had actual knowledge is a question of material fact that must be determined by the district court upon remand.

## PROCEDURAL HISTORY AND FACTS

Wickes Furniture Company leased retail space from ECT Holding, LLC, in March 2007. The lease required Wickes to improve the premises and in exchange, ECT agreed to contribute $2,150,000 toward the improvements. The lease also required Wickes to obtain ECT's approval on both the final build-out plans and the selection of the general contractor. The lease stated: "Landlord approves Tenant's use of O'Neil Industries Inc. or an affiliate thereof, as its general contractor." The lease was executed by ECT through its manager, Eliezer Mizrachi.

Two days after the execution of the lease, ECT recorded a notice of nonresponsibility with the Clark County Recorder's Office, pursuant to NRS 108.234. In the notice, ECT acknowledged the intended construction by Wickes and noted its nonresponsibility for the improvements. However, ECT did not deliver the notice to O'Neil, the prime contractor.[1]

---

[1] There is no evidence in the record that ECT served or attempted to serve Wickes the notice of nonresponsibility within ten days after recording it, as required by NRS 108.234(4)(a). SNMARK admits that ECT never served O'Neil, the prime contractor, within ten days after the formation of the contract between Wickes, the lessee, and O'Neil, as required by NRS 108.234(4)(b). Because ECT failed to comply with the provisions of NRS 108.234, SNMARK cannot, and does not, claim it is not subject to or is immune from the attachment of a mechanic's lien. NRS 108.234(6).

In April 2007, ECT transferred the shopping center by quitclaim deed to SNMARK. ECT also assigned all of its rights and obligations under the lease to SNMARK. Mizrachi, the manager of both companies, executed the assignment document on behalf of both ECT and SNMARK.

In July 2007, Wickes and O'Neil executed a construction contract for $5,527,416 to complete the tenant improvement work. O'Neil then entered into a subcontract with Hardy for work on the Wickes store.[2]

Throughout the construction, SNMARK, through Mizrachi, was involved in several aspects of O'Neil's tenant improvement work, including directing O'Neil on the demising walls, curbs, gutters, and landscaping; making 15 to 20 site visits to monitor O'Neil's progress; and participating in meetings with Wickes and O'Neil to discuss the removal of an entry canopy. In addition, Mizrachi specifically directed O'Neil's work on the installation of the electrical house panel that controlled the electricity and metering for the entire shopping center. O'Neil also performed work on the common areas for the benefit or at the direction of SNMARK, who remained responsible for those common areas.[3]

O'Neil and its subcontractors, including Hardy, completed the work on Wickes Furniture Store in November 2007. O'Neil was paid $2,150,001 by Wachovia Bank, on behalf of SNMARK, between July and September 2007. Before these payments were made, Mizrachi communicated directly with O'Neil to verify the percentage completed so that the appropriate progress payment could be made to O'Neil. Wickes paid O'Neil $1,145,064 in October 2007. O'Neil achieved a cost savings of $99,000 in favor of Wickes, but an unpaid balance remains.[4]

O'Neil never gave a notice of right to lien pursuant to NRS 108.245. On January 18, 2008, O'Neil recorded a mechanic's lien against SNMARK's property for $2,133,620 and listed SNMARK as the owner. Hardy gave a notice of right to lien, pursuant to NRS 108.245, to Wickes and O'Neil, but not to SNMARK. On December 18, 2007, Hardy recorded a mechanic's lien listing Wickes Furniture as the owner.

Hardy filed suit against SNMARK, Wickes, and O'Neil on January 25, 2008. Hardy then filed to foreclose on the mechanic's

---

[2]There were multiple subcontractors; two other subcontractors also placed liens on the property and were involved in the consolidated district court case. Only O'Neil and Hardy are parties to this appeal.

[3]O'Neil's work on the common area included repaving portions of the parking lot, restriping the parking lot, removing existing planters, relocating and reinstalling planters, installing irrigation curbs and landscaping, removing sidewalks, installing street lights in the parking lot, and more.

[4]On February 3, 2008, less than one year into its 30-year lease with SNMARK, Wickes filed for bankruptcy and vacated the property.

lien on February 29, 2008. O'Neil answered and asserted cross-claims against SNMARK, including a claim to foreclose its mechanic's lien. O'Neil also filed a direct action against SNMARK on April 1, 2008. These two cases were consolidated in district court.

SNMARK filed a motion to expunge the mechanics' liens and lis pendens and for partial summary judgment. The district court "determined that none of the Lien Claimants served SNMARK with any Notice of Right to Lien as required by NRS 108.245, and good cause otherwise appearing," granted SNMARK's motion in all respects.[5] This appeal followed.

## DISCUSSION

### Standard of review

#### Statutory interpretation

"The construction of a statute is a question of law that this court reviews de novo." *A.F. Constr. Co. v. Virgin River Casino*, 118 Nev. 699, 703, 56 P.3d 887, 890 (2002) (citing *SIIS v. United Exposition Services Co.*, 109 Nev. 28, 30, 846 P.2d 294, 295 (1993)). The "court first looks to the plain language of the statute." *A.F. Constr. Co.*, 118 Nev. at 703, 56 P.3d at 890 (citing *Salas v. Allstate Rent-A-Car, Inc.*, 116 Nev. 1165, 1168, 14 P.3d 511, 513-14 (2000)). "[I]f the statutory language . . . fails to address the issue, this court construes the statute according to that which 'reason and public policy would indicate the legislature intended.'" *A.F. Constr. Co.*, 118 Nev. at 703, 56 P.3d at 890 (quoting *State, Dep't Mtr. Vehicles v. Vezeris*, 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986)).

The Legislature's intent is the primary consideration when interpreting an ambiguous statute. *Cleghorn v. Hess*, 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993). When construing an ambiguous statutory provision, "this court determines the meaning of the words used in a statute by examining the context and the spirit of the law or the causes which induced the legislature to enact it." *Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007) (internal quotation omitted). In conducting this analysis, "[t]he entire subject matter and policy may be involved as an interpretive aid." *Id.* (internal quotation omitted). Accordingly, this court will consider "the statute's multiple legislative provisions as a whole." *Id.*

---

[5]We note that the district court did not make a determination as to whether an issue of material fact exists as to actual knowledge.

This court has a duty to construe statutes as a whole, so that all provisions are considered together and, to the extent practicable, reconciled and harmonized. *Id.*; *Southern Nev. Homebuilders v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005). In addition, the court will not render any part of the statute meaningless, and will not read the statute's language so as to produce absurd or unreasonable results. *Leven*, 123 Nev. at 405, 168 P.3d at 716.

### Summary judgment

This court reviews orders granting summary judgment de novo. *Yeager v. Harrah's Club, Inc.*, 111 Nev. 830, 833, 897 P.2d 1093, 1094 (1995). Summary judgment is only proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. NRCP 56(c); *see Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "On appeal from a summary judgment, this court may 'be required to determine whether the law has been correctly perceived and applied by the district court.'"[6] *Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000) (quoting *Mullis v. Nevada National Bank*, 98 Nev. 510, 512, 654 P.2d 533, 535 (1982)), *overruled on other grounds by Olson v. Richard*, 120 Nev. 240, 241-44, 89 P.3d 31, 31-33 (2004).

### NRS 108.2453

NRS 108.2453(1) provides: "Except as otherwise provided in NRS 108.221 to 108.246, inclusive, a person may not waive or modify a right, obligation or liability set forth in the provisions of NRS 108.221 to 108.246 [the mechanic's lien statutes], inclusive." SNMARK argues that NRS 108.2453(1) clearly articulates a directive that compliance with the technical obligations of the statutes is required and that a lien claimant can no longer claim that the owner has forfeited his or her right to service of a preliminary notice of right to lien (pre-lien notice pursuant to NRS 108.245).

Contrary to SNMARK's assertion, NRS 108.2453(1) can be interpreted to avoid overruling *Fondren* and *Board of Trustees v. Durable Developers*, 102 Nev. 401, 724 P.2d 736 (1986). Thus,

---

[6]In this case, the district court believed that strict compliance with NRS 108.245 was required, and that since O'Neil and Hardy did not serve a prelien notice on SNMARK, SNMARK was entitled to judgment as a matter of law.

NRS 108.2453(1) could be interpreted as voiding conditions, stipulations, or provisions of a contract that require a lien claimant to waive lien rights. With the presumption against abrogation and alteration of common law, we conclude that NRS 108.2453(1) is ambiguous. It is not clear from the plain language of the statute that strict compliance with the pre-lien notice statute is required. Therefore, we must look to the legislative history and harmonize NRS 108.2453 and NRS 108.245.

*The 2003 and 2005 legislative amendments to the mechanic's lien law did not abrogate or overrule Fondren and Nevada's substantial compliance doctrine*

SNMARK argues that the legislative amendments of 2003 and 2005, specifically the addition of NRS 108.2453 in 2003, overruled Nevada's substantial compliance doctrine and requires strict compliance with the statutory requirements in order for a lien claimant to perfect his or her claim. O'Neil and Hardy argue that the legislative amendments did not abrogate *Fondren* or the actual knowledge exception to the pre-lien requirement. We conclude that *Fondren* was not abrogated or overruled by NRS 108.2453. *Fondren* is still good law.

*Nevada's mechanic's lien law*

Nevada's mechanic's lien law requires that a lien claimant serve the owner of the property with preliminary notice of right to lien (pre-lien notice).[7] NRS 108.245. NRS 108.245 provides in pertinent part:

> 1. Except as otherwise provided in subsection 5, every lien claimant, other than one who performs only labor, who claims the benefit of NRS 108.221 to 108.246, inclusive, shall, at any time after the first delivery of material or performance of work or services under a contract, deliver in person or by certified mail to the owner of the property a notice of right to lien in substantially the following form:
>
> . . . .

---

[7]"Owner" is defined by NRS 108.22148, which provides that " '[o]wner' includes: . . . [a] person who claims an interest in or possesses less than a fee simple estate in the property." Thus, an owner includes a lessee such as Wickes, who possessed "less than a fee simple estate in the property." NRS 108.22148(1)(e); *see also Tobin v. Gartiez*, 44 Nev. 179, 185, 191 P. 1063, 1065 (1920) (discussing a leasehold interest as being "some lesser estate" than a fee simple estate).

2. Such a notice does not constitute a lien or give actual or constructive notice of a lien for any purpose.

. . . .

5. A prime contractor or other person who contracts directly with an owner or sells materials directly to an owner is not required to give notice pursuant to this section.

"The purpose underlying the notice requirement is to provide the owner with knowledge that work and materials are being incorporated into the property." *Fondren*, 106 Nev. at 710, 800 P.2d at 721-22.

The pre-lien notice is important because "every improvement constructed, altered or repaired upon property shall be deemed to have been constructed, altered or repaired at the instance of each owner having or claiming any interest therein." NRS 108.234(1). A disinterested owner may give "notice that he or she will not be responsible for the improvement by recording a notice in writing to that effect with the county recorder" "within 3 days after he or she first obtains knowledge of the construction." NRS 108.234(2). If the disinterested owner is a lessor, the notice is timely if it is filed within three days of the lease and must be served upon the lessee and the prime contractor.[8] NRS 108.234(2)(a); NRS 108.234(4)(a)-(b). If an owner fails to record and serve a notice of nonresponsibility pursuant to NRS 108.234, the owner cannot claim that he or she is not subject to, or is immune from, the attachment of a mechanic's lien. NRS 108.234(6).

"This court has repeatedly held that the mechanic's lien statutes are remedial in character and should be liberally construed; that substantial compliance with the statutory requirements is sufficient to perfect the lien if the property owner is not prejudiced." *Las Vegas Plywood v. D & D Enterprises*, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982).

As this court explained in *Durable Developers*, a lien claimant substantially complies with NRS 108.245's pre-lien requirement when the property owner has actual knowledge of the potential lien claim and is not prejudiced. 102 Nev. at 410, 724 P.2d at 743. Failure to either fully or substantially comply with the mechanic's lien statute will render a mechanic's lien invalid as a matter of law.

---

[8]A prime contractor is defined by NRS 108.22164(1) as "[a] person who contracts with an owner or a lessee of property to provide work, materials or equipment to be used for the improvement of the property or in the construction, alteration or repair of a work of improvement."

*Schofield v. Copeland Lumber*, 101 Nev. 83, 86, 692 P.2d 519, 521 (1985).

In *Fondren*, this court reaffirmed the principle that was set forth in *Durable Developers*, concluding that actual knowledge of the potential lien claim was sufficient to perfect a lien. 106 Nev. at 709, 800 P.2d at 721. In *Fondren*, we concluded that the lessor of a commercial property who failed to file a notice of nonresponsibility had knowledge that the lessee had contracted to have remodeling work done. *Id.* at 709-10, 800 P.2d at 721. The mechanic's lien on the property could be enforced against the lessor even though the contractors[9] who sought to enforce the liens failed to deliver a pre-lien notice to the lessor. *Id.* Because the lessor had actual knowledge of the work, the purpose behind the pre-lien notice had been satisfied. *Id.* at 710, 800 P.2d 721-22. "Delivery of any pre-lien notice would have accomplished little or nothing and, therefore, was not required." *Id.*

### Legislative amendments

SNMARK argues that the adoption of NRS 108.2453 in 2003 abrogated Nevada's substantial compliance doctrine and requires strict compliance with the statutory requirements in order for a lien claimant to perfect its claim. We disagree.

In the enactment of a statute, "the legislature will be presumed not to intend to overturn long-established principles of law, and the statute will be so construed unless an intention to do so plainly appears by express declaration or necessary implication." 73 Am. Jur. 2d. *Statutes* § 97 (2001); *see also Orr Ditch Co. v. Dist. Ct.*, 64 Nev. 138, 164, 178 P.2d 558, 571 (1947) ("[T]here is a presumption that the law-makers did not intend to abrogate or alter [the common law] in any manner, although where the intention to alter or repeal is clearly expressed, it must be given effect by the courts."); *State v. Donnelly*, 20 Nev. 214, 217, 19 P. 680, 681 (1888) ("The presumption is always against the intention to repeal where express terms are not used." (internal quotations omitted));

---

[9]In *Fondren*, we quoted the district court's conclusion, which we approved by rejecting Fondren's argument that the district court erred in applying the law to the facts in that case, that it was immaterial that Fondren did not know the names of individual subcontractors. *Fondren*, 106 Nev. at 708 n.2, 800 P.2d at 720 n.2. However, in *Fondren*, no subcontractors sought to impose a lien on the property; rather, all of the claimants contracted directly with the lessee. *Id.* at 707, 800 P.2d at 720. Additionally, Fondren's agent supervised the construction by those contractors. *Id.* at 709, 800 P.2d at 721. It is immaterial whether the owner had knowledge of the identity of subcontractors when it is the general contractor who is claiming actual knowledge.

*Estate of David Walley*, 11 Nev. 260, 264 (1876) ("Repeals by implication are not favored, and are only held to have occurred in cases of irreconcilable repugnancy between the later and the former enactment, when the two cannot stand together.").

In 2003, NRS 108.2453 was added by Senate Bill 206 (S.B. 206). 2003 Nev. Stat., ch. 427, § 25, at 2590-91. NRS 108.2453(1) provides: "Except as otherwise provided in NRS 108.221 to 108.246, inclusive, a person may not waive or modify a right, obligation or liability set forth in the provisions of NRS 108.221 to 108.246, inclusive." The summary provided with the proposed changes to the mechanic's lien laws stated that the section

> voids conditions, stipulations, and provisions of a contract that requires a lien claimant to waive lien rights, except as provided in statute; makes the contract subject to the laws of another state; requires litigation or arbitration to occur in another state; or requires a lien claimant to waive delay damages that were not contemplated. Please note that 36 states prohibit the prospective waiver of lien rights either by statute or case law.

Hearing on S.B. 206 Before the Assembly Comm. on Judiciary, 72d Leg. (Nev., May 8, 2003).

The legislative history of S.B. 206, and the specific section that added NRS 108.2453, demonstrates that the intent of the 2003 legislative amendments was to facilitate payments to lien claimants. Nothing in the legislative history of S.B. 206 indicates any intent by the Legislature to overrule long-standing Nevada caselaw supporting a liberal interpretation of mechanic's lien statutes that allow substantial performance of statutory requirements to perfect a lien.

The Legislature amended Nevada's mechanic's lien laws again in 2005, with the adoption of Senate Bill 343 (S.B. 343). 2005 Nev. Stat., ch. 428, § 25, at 1913-14. Again, the legislative record is devoid of any intent to overrule Nevada's substantial performance doctrine. Further, it includes a statement reaffirming that the purpose of the 2003 amendment was to assist lien claimants:

> In 2003 we did a major overhaul of the statute, which is there for a purpose. It is there to assist people who have improved real property so that they can get paid for their efforts. That is something that has proven to work over the years. In fact, our Nevada Supreme Court has consistently held that our lien law should be liberally construed in favor of lien claimants.

Hearing on S.B. 343 Before the Assembly Comm. on Judiciary, 73d Leg. (Nev., May 13, 2005).

The Legislature did not express a clear intent to overrule *Fondren* in either amendment to Chapter 108. To the contrary, the Legislature favorably cited this court's holdings that liberally construe the lien laws in favor of lien claimants. Hearing on S.B. 343 Before the Assembly Comm. on Judiciary, 73d Leg. (Nev., May 13, 2005). Absent a clear statement of intent to abrogate *Fondren* and *Durable Developers* in the legislative history, we will not interpret NRS 108.2453 to require strict compliance and overrule Nevada's doctrine of substantial compliance. Instead, we interpret NRS 108.2453(1) to avoid overruling *Fondren* and *Durable Developers*.

 █

Moreover, we conclude that NRS 108.2453(1) voids conditions, stipulations, or provisions in a contract that require a lien claimant to waive lien rights. Therefore, substantial compliance with the pre-lien notice requirement is sufficient to perfect the lien if the property owner is not prejudiced. The rule articulated in *Durable Developers* and upheld in *Fondren*, that actual knowledge on the part of the property owner constitutes substantial compliance, remains good law.[10]

*The district court erred in granting summary judgment against O'Neil*

Both O'Neil and Hardy challenge the district court's determination that their failure to give SNMARK statutory pre-lien notice was fatal to their respective liens. We conclude that summary judgment against O'Neil and Hardy was improper. A genuine issue of material fact exists regarding whether SNMARK had actual knowledge of the potential lien claims of O'Neil and Hardy.

 █

In *Fondren*, we explained that a property owner who negotiates a lease with knowledge that substantial improvements need to be made to the property has actual knowledge of potential lien claims on the property. *Fondren*, 106 Nev. at 709, 800 P.2d at 721. If that owner fails to file a notice of nonresponsibility after knowledge of the construction, " ' 'the statute provides that the construction is at the instance of the owner.' ''*Id.* (quoting *Matter of Stanfield*, 6 B.R. 265, 268 (Bankr. D. Nev. 1980)). This court concluded that the property owner in *Fondren* had negotiated the lease with the un-

---

[10]We are not persuaded by the treatise on which SNMARK relies. While "[m]any construction practitioners believe the demise of *Fondren* is complete with the adoption of NRS 108.2453(1)," Leon F. Mead II, *Nevada Construction Law* § 8.3 (2009), we disagree.

derstanding that substantial remodeling would be required on the property. *Id.*

In addition, a property owner has actual knowledge of potential lien claims if the property owner or the property owner's agent regularly inspects the remodeling project. *Id.* Actual knowledge by the property owner's agent is imputed to the property owner. *Id.* (citing *Gould v. Wise,* 18 Nev. 253, 259, 3 P. 30, 31 (1884)). An owner who witnesses the construction, either firsthand or through an agent, cannot later claim a lack of knowledge regarding future lien claims. *Id.* In *Fondren,* the property owner received regular updates from her lawyer and approved specific construction activities. *Id.*

We concluded that the property owner in *Fondren* had actual knowledge of the potential lien claims because the property owner had both knowledge that the property required substantial remodeling and regular updates on the progress of the project from an agent who inspected the premises. ''Delivery of any pre-lien notice would have accomplished little or nothing and, therefore, was not required.'' *Id.* at 710, 800 P.2d at 722. However, '' '[t]he purpose of the pre-lien statute is to put the owner on notice of work and materials furnished by *third persons* with whom he has no direct [contract].' '' *Id.* at 709, 800 P.2d at 721 (quoting *Matter of Stanfield,* 6 B.R. at 269). Therefore, we conclude that actual knowledge requires that the owner has to have been reasonably made aware of the identity of the third party seeking to record and enforce a lien.

### Summary judgment against O'Neil

O'Neil argues facts similar to those presented in *Fondren.* O'Neil claims that SNMARK had actual knowledge of potential lien claims, and specifically, potential lien claims by O'Neil, because SNMARK was aware that the property required substantial remodeling when it negotiated the lease with Wickes. Further, O'Neil points out that SNMARK specifically knew that O'Neil would be adding value to the property because SNMARK's predecessor-in-interest approved the use of O'Neil as the general contractor in the lease with Wickes.

O'Neil also claims that SNMARK had actual knowledge of O'Neil's presence on the work site because SNMARK regularly inspected the project site. O'Neil cites a number of occasions on

which SNMARK's representative met with O'Neil and instructed O'Neil on how to complete certain aspects of the remodeling project. O'Neil claims that because of these interactions, SNMARK had actual knowledge of O'Neil's potential work on the property and, therefore, O'Neil's potential lien claims.

O'Neil has presented factual arguments that SNMARK had actual knowledge of its potential lien claims that may excuse O'Neil's duty to provide a pre-lien notice. Because it rejected the application of substantial compliance and actual knowledge, the district court made no finding as to whether SNMARK had actual knowledge of O'Neil's potential lien claims. Therefore, a genuine issue of material fact remains. Thus, we conclude that the district court erred in granting summary judgment against O'Neil.[11]

### Summary judgment against Hardy

Hardy argues that NRS 108.245 only requires one owner to be given notice in order to affect the interest of all other interest holders. We disagree. Where a claimant is seeking to place and enforce a lien, NRS 108.245 requires that the claimant serve all parties whose interest it is seeking to affect. The service of one owner is not adequate to give notice to other owners of the potential claim. Therefore, while Hardy's pre-lien notice to O'Neil and Wickes is sufficient to affect their interest in the property, it is insufficient to affect SNMARK's interest in the property.

Hardy also argues that, under NRS 108.229(3), a mistake in the property owner's name on a pre-lien notice does not invalidate the lien. Hardy argues that it had substantially complied with the statute despite the fact that it served the wrong entity. Even if we were to agree that NRS 108.229(3) is applicable to the pre-lien notice statute, substantial compliance is not applicable in this instance. Hardy has an affirmative duty of due diligence to ascertain the identity of the owner whose interest it is seeking to affect. This is not a case where Hardy served the right entity under the wrong name; instead, Hardy served an entirely different entity that holds an entirely different interest in the property. NRS 108.245 not only requires that the notice of right to lien contain certain information, but also requires that the notice be given to the right person or en-

---

[11]In addition, O'Neil also argues that it should be excused from the pre-lien notice requirement because: (1) it was a prime contractor and contracted directly with the owner, and (2) SNMARK was not a disinterested owner and is therefore estopped from invoking the pre-lien statute. Given our conclusion to reverse and remand for the district court to determine whether SNMARK had actual knowledge of O'Neil's potential lien claims, we do not reach O'Neil's additional arguments.

tity. A failure to serve the right person or entity cannot be cured by NRS 108.229(3).

Hardy argues that SNMARK had actual knowledge of its potential lien claims. Hardy does not point to a contract or specific interactions between SNMARK and itself, but instead relies on SNMARK's general awareness of construction on the property in question.[12] Like the lien claimants in *Fondren*, Hardy claims that SNMARK knew of the improvements to its property and therefore had actual knowledge of Hardy's potential lien claims.

However, an owner's actual knowledge is more than mere knowledge of construction occurring on its property. Actual knowledge requires that the owner have knowledge as to the identity of the third person with whom he has no direct contract. In cases of actual knowledge for mechanics' liens, it is a question of fact as to whether the owner had actual or constructive knowledge as to the existence of the third party and the third party's identity. Actual knowledge may be found where the owner has supervised work by the third party, reviewed billing statements from the third party, or any other means that would make the owner aware that the third-party claimant was involved with work performed on its property.

In cases such as *Fondren*, we imputed the knowledge of the lessee as to the existence and identity of the parties with whom the lessee directly contracted because a relationship existed between the lessor and the lessee. The lessor, through its contractual relationship, would have been aware that the lessee had hired a contractor to perform work on the property. However, a lessor would not necessarily be aware of whether the lessee's contractor retained additional contractors and who those contractors may be. We will not impute knowledge when there is no evidence that either the lessee or the lessor knew of both the existence and the identity of additional third parties.

The purpose of the pre-lien statute is to protect owners from hidden claims and the statute is meant to apply to subcontractors and materialmen. *Matter of Stanfield*, 6 B.R. at 269. This purpose would be frustrated if mere knowledge of construction is sufficient to invoke the actual knowledge exception against an owner by any contractor. Otherwise, the exception would swallow the rule.

As noted in the discussion relating to O'Neil, a material issue of fact exists as to whether SNMARK had actual knowledge of O'Neil's claim. Likewise, an issue of material fact exists as to whether SNMARK had actual knowledge of Hardy's potential lien

---

[12]It should be noted that while SNMARK had actual dealings with O'Neil, such as construction review, no similar relationship or dealings existed between SNMARK and Hardy.

claim. Thus, we conclude that the district court erred in granting summary judgment.

## CONCLUSION

We hold that NRS 108.2453 does not abrogate *Fondren* or Nevada's substantial compliance doctrine. Substantial compliance, however, requires notice to be given to the party whose interest the lien claimant is seeking to affect. Notice to one owner is not sufficient to affect the interest of other owners. We further conclude that the actual knowledge exception requires the owner to have actual knowledge of the identity of the lien claimant. Accordingly, we reverse the district court's grant of summary judgment against O'Neil and Hardy, and remand for further proceedings consistent with this opinion.

PARRAGUIRRE, C.J., and HARDESTY, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.