139 Nev., Advance Opinion 31

# IN THE SUPREME COURT OF THE STATE OF NEVADA

BMO HARRIS BANK, N.A.,
Appellant,
vs.
F. HARVEY WHITTEMORE; AND
ANNETTE WHITTEMORE,
INDIVIDUALS,
Respondents.

No. 84304



FILED

SEP 14 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Appeal from a district court order vacating an affidavit of renewal and declaring a judgment expired and void. Second Judicial District Court, Washoe County; Egan K. Walker, Judge.

*Affirmed.*

Gunderson Law Firm and Mark H. Gunderson, Austin K. Sweet, and John R. Funk, Reno,
for Appellant.

Echeverria Law Office and John P. Echeverria, Reno; Matthew L. Sharp, Ltd., and Matthew L. Sharp, Reno,
for Respondents.

BEFORE THE SUPREME COURT, EN BANC.[1]

___

[1]The Honorable Ron Parraguirre, Justice, voluntarily recused himself and thus did not participate in the decision of this matter.

## OPINION

By the Court, STIGLICH, C.J.:

In this opinion, we revisit the procedure to renew a judgment under NRS 17.214 and consider whether a judgment creditor must strictly comply with the certified mail method-of-notice requirement outlined in NRS 17.214(3). NRS 17.214(3) requires a judgment creditor to notify a judgment debtor of an affidavit of renewal of judgment by certified mail within three days of filing the affidavit. In *Leven v. Frey*, we concluded that a judgment creditor must satisfy NRS 17.214(3) to renew a judgment and that strict compliance with the three-day deadline is required. 123 Nev. 399, 402-04, 409, 168 P.3d 712, 715, 719 (2007). Here, appellant provided electronic notice of an affidavit of renewal to respondents' counsel but did not provide timely notice by certified mail to respondents, the judgment debtors. Appellant now asks this court to hold that NRS 17.214(3) is not a requirement to renew a judgment, contrary to *Leven*, and alternatively, that substantial compliance may satisfy the certified mail method-of-notice requirement. We decline to do so. Instead, we reaffirm *Leven*'s holding that a judgment creditor must comply with NRS 17.214(3) to renew a judgment, and we also conclude that the certified mail method-of-notice requirement demands strict compliance. Accordingly, we affirm the district court's ruling that appellant did not comply with NRS 17.214 and thus could not renew its judgment.

### FACTS AND PROCEDURAL HISTORY

Appellant BMO Harris Bank, N.A. (BMO), fka Bank of the West, obtained a judgment against respondents Harvey and Annette Whittemore on November 18, 2015. BMO subsequently recorded the judgment. Later, BMO sued the Whittemores and their family entities in a

Supreme Court
of
Nevada

(O) 1947A

2

separate suit, generally alleging they fraudulently transferred assets to avoid their liability. Having not collected on the 2015 judgment and with it set to expire on November 18, 2021, BMO filed an affidavit of renewal of judgment, recorded the affidavit, and electronically served the Whittemores' counsel on November 10. After an inquiry by the Whittemores' counsel, BMO notified the Whittemores by certified mail of the affidavit of renewal on December 2. The Whittemores moved to vacate the affidavit of renewal and declare the judgment void. The district court granted the motion, concluding that BMO did not comply with NRS 17.214(3) because it did not send notice of the affidavit of renewal to the Whittemores by certified mail within three days of filing it. BMO appeals.

## DISCUSSION

We generally review an order granting a motion to vacate a renewed judgment for an abuse of discretion. *See Bianchi v. Bank of Am., N.A.,* 124 Nev. 472, 474, 186 P.3d 890, 891-92 (2008) (analogizing a motion to vacate a renewed foreign judgment to an NRCP 60(b) motion for relief from a void judgment and reviewing an order resolving such a motion for an abuse of discretion); *see also Fid. Creditor Serv., Inc. v. Browne,* 106 Cal. Rptr. 2d 854, 857 (Ct. App. 2001) (reviewing an order denying a motion to vacate an affidavit of renewal for an abuse of discretion). However, this appeal presents two questions of law, which we review de novo—the interpretation of NRS 17.214 and whether NRS 17.214(3)'s certified mail method-of-notice requirement demands strict compliance or allows for substantial compliance. *See Leven,* 123 Nev. at 402, 168 P.3d at 714 (providing that this court reviews de novo matters of statutory construction and whether strict compliance is required). We begin with the interpretation of NRS 17.214.

SUPREME COURT
OF
NEVADA

(O) 1947A

*NRS 17.214(3) must be met to renew a judgment under NRS 17.214*

BMO argues that the structure of NRS 17.214 reveals that NRS 17.214(3), which addresses notice to the judgment debtor, is not required to renew a judgment. It argues that NRS 17.214(1) alone provides the procedure to renew a judgment, namely, timely filing the affidavit of renewal and timely recording the affidavit. Because the notice requirement is not enumerated in NRS 17.214(1), BMO asserts, it is not required to renew a judgment. Accordingly, BMO contends it renewed its judgment by timely filing and recording the affidavit.

NRS 17.214 lays out the procedure to renew a judgment. NRS 17.214(1)(a) provides that a "judgment creditor . . . may renew a judgment which has not been paid by: (a) [f]iling an affidavit . . . titled as an 'Affidavit of Renewal of Judgment'" that includes certain information about the judgment. The judgment creditor must record the affidavit within three days of filing it if the original judgment was recorded. NRS 17.214(1)(b). NRS 17.214(2) provides that filing "the affidavit renews the judgment to the extent of the amount shown due in the affidavit." NRS 17.214(3) provides that the "judgment creditor . . . shall notify the judgment debtor of the renewal of the judgment by sending a copy of the affidavit of renewal by certified mail . . . within 3 days after filing the affidavit."

In *Leven*, we interpreted NRS 17.214(3) as containing a requirement to renew a judgment. 123 Nev. at 402-04, 168 P.3d at 714-15. We reasoned that NRS 17.214(3) is "clear" that a creditor must notify a debtor of an affidavit of renewal within three days of filing the affidavit to renew a judgment. *Id.* at 402-03, 168 P.3d at 715. "[U]nder the doctrine of *stare decisis*, we will not overturn [precedent] absent compelling reasons for so doing." *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) (footnote omitted). Such compelling reasons must be "weighty and

SUPREME COURT
OF
NEVADA

(O) 1947A

conclusive," *id.*, such as preventing the "perpetuation of error," *Stocks v. Stocks*, 64 Nev. 431, 438, 183 P.2d 617, 620 (1947) (internal quotation marks omitted). A "mere disagreement" is not a compelling reason. *Miller*, 124 Nev. at 597, 188 P.3d at 1124. When it comes to NRS 17.214, BMO has failed to demonstrate compelling reasons to disturb *Leven*'s interpretation. Thus, we reaffirm that NRS 17.214(3) must be met to renew a judgment.

Our conclusion is bolstered by the fact that the Legislature has amended NRS 17.214 twice since *Leven* but has not changed NRS 17.214(3) or otherwise indicated that it disagreed with our interpretation. *Compare* 2021 Nev. Stat., ch. 506, § 77, at 3350-51 (enacting a minor amendment to NRS 17.214(1)), *and* 2011 Nev. Stat., ch. 388, § 2, at 2409-10 (similar), *with* NRS 17.214 (1995) (enacting the version of NRS 17.214 in effect when *Leven* was decided). This suggests that *Leven* interpreted NRS 17.214 in accordance with the Legislature's intent. *See Poasa v. State*, 135 Nev. 426, 428-29, 453 P.3d 387, 389 (2019) (holding that the Legislature's silence in the years after the court interpreted the statute at issue "suggests its agreement with the court's construction of the statute, particularly as it has made other changes to the statute"); *see also Runion v. State*, 116 Nev. 1041, 1047 n.2, 13 P.3d 52, 56 n.2 (2000) (presuming that the Legislature agreed with this court's interpretation where the Legislature subsequently amended a statute but did not change the language that this court interpreted).

*A creditor must strictly comply with NRS 17.214(3)'s certified mail method-of-notice requirement*

Alternatively, BMO argues that NRS 17.214(3)'s requirement of notice by certified mail may be satisfied by substantial compliance, not strict compliance. It contends that requiring strict compliance leads to an

absurd result because it assumes that the Whittemores learned about the affidavit of renewal through electronic service on their counsel.[2]

We disagree. As noted, in *Leven* we considered whether NRS 17.214 requires strict compliance and concluded that NRS 17.214's timing requirement demands strict compliance. 123 Nev. at 409, 168 P.3d at 719. While *Leven* was limited to the timing requirement, our reasoning also extends to the certified mail method-of-notice requirement in NRS 17.214(3), and we now clarify that its certified mail method-of-notice requirement likewise demands strict compliance.

The substantial-compliance standard recognizes performance as adequate where the reasonable purpose of a statute has been met, even absent technical compliance with the statutory language. *Schleining v. Cap One, Inc.*, 130 Nev. 323, 331, 326 P.3d 4, 9 (2014). Strict compliance, in contrast, requires exact compliance with a statute's terms. *In re Murack*, 957 N.W.2d 124, 130 (Minn. Ct. App. 2021). To determine whether a statute requires strict or substantial compliance, we consider the statute's language, as well as policy and equity. *Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. 470, 475-76, 255 P.3d 1275, 1278 (2011). The inquiry is whether the purpose of the statute can be served by substantial compliance rather than technical compliance with the statute. *Id.* at 476, 255 P.3d at 1278. And we will allow substantial compliance when requiring strict compliance would lead to an absurd result. *See Einhorn v. BAC Home*

---

[2]BMO also argues that the district court erred in voiding the original judgment because BMO acted to preserve the judgment by timely filing the separate, still-pending fraudulent transfer action. BMO, however, fails to provide cogent argument or relevant authority supporting its position, and therefore, we decline to consider this argument. *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).

*Loans Servicing, LP,* 128 Nev. 689, 697, 290 P.3d 249, 254 (2012) (concluding that the district court did not abuse its discretion in denying sanctions when the purposes of a statute's requirements were met and requiring strict compliance would have "exalt[ed] literalism for no practical purpose").

### *The statutory language favors strict compliance*

In evaluating a statute's language, we consider the type of provision at issue. *Leven*, 123 Nev. at 408, 168 P.3d at 718. If a statute's provision is a "[t]ime and manner" restriction, strict compliance is generally required, but if the provision concerns "form and content," substantial compliance may suffice. *Id.* A time and manner provision addresses "when performance must take place and *the way in which the deadline must be met.*" *Markowitz v. Saxon Special Servicing,* 129 Nev. 660, 664, 310 P.3d 569, 572 (2013) (emphasis added).

Here, the method-of-notice requirement provides that the judgment creditor must notify the debtor of the affidavit of renewal by certified mail. This refers to the way in which the deadline must be met. The certified mail method-of-notice requirement is therefore a time and manner provision, which weighs in favor of demanding strict compliance. *See Marsh-McLennan Bldg. Inc. v. Clapp,* 980 P.2d 311, 313 n.1 (Wash. Ct. App. 1999) (deeming a "manner of service" requirement in a statute to be a time and manner provision).

Additionally, we consider whether the statute uses mandatory language. *See Leyva,* 127 Nev. at 476, 255 P.3d at 1279 (recognizing that strict compliance is usually required where mandatory language is used). NRS 17.214(3) provides that the judgment creditor "shall notify the judgment debtor of the renewal of the judgment by sending a copy of the affidavit of renewal by certified mail." "'Shall' imposes a duty to act."

NRS 0.025(1)(d). This mandatory language also supports a determination that the provision requires strict compliance. Accordingly, the statutory language weighs in favor of requiring strict compliance as well.

*The purpose of NRS 17.214(3) favors substantial compliance but is not dispositive*

In determining whether substantial compliance is permissible, "we examine whether the purpose of the statute . . . can be adequately served in a manner other than by technical compliance." *Leyva*, 127 Nev. at 476, 255 P.3d at 1278. The certified mail method-of-notice requirement in NRS 17.214(3) serves to protect an individual debtor's due process rights. *Leven*, 123 Nev. at 409, 168 P.3d at 719. We recognize that the purpose of notifying the judgment debtor of the renewal is met if the debtor has actual knowledge of the renewal regardless of how the debtor came to learn of it. Thus, the purpose of the certified mail method-of-notice requirement weighs in favor of permitting substantial compliance.

Nevertheless, we are not persuaded that the purpose of NRS 17.214 outweighs the statutory language favoring strict compliance. In contexts where we have held that a method-of-notice requirement may be met by substantial compliance, additional considerations beyond the purpose factor weighed in favor of substantial compliance. For example, in *Hardy Companies v. SNMARK, LLC*, we held that substantial compliance with the notice requirement of a mechanic's lien statute was permissible because such statutes are "remedial in character and should be liberally construed." 126 Nev. 528, 536, 245 P.3d 1149, 1155 (2010) (quoting *Las Vegas Plywood v. D & D Enters.*, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982)). And in *Schleining v. Cap One, Inc.*, we held that substantial compliance with a method-of-notice requirement in a statute governing notice of default was permissible, in part because the Legislature had

SUPREME COURT
OF
NEVADA

(O) 1947A

expressly permitted substantial compliance in a related statute. 130 Nev. at 329-30, 326 P.3d at 8. Having examined NRS 17.214(3), we do not find additional considerations of the sort that would favor substantial compliance here.[3] Indeed, to the contrary, "because judgment renewal proceedings are purely statutory in nature and are a measure of rights, a court cannot deviate from those judgment renewal conditions." *Leven*, 123 Nev. at 409, 168 P.3d at 719.

## CONCLUSION

We reaffirm *Leven*'s holding that a judgment creditor must follow NRS 17.214(3) to renew a judgment. We also clarify that a judgment creditor must strictly comply with NRS 17.214(3)'s certified mail method-of-notice requirement. In light of the foregoing, we affirm.

_____, C.J.
Stiglich

We concur:

_____, J.
Cadish

_____, J.
Herndon

_____, J.
Bell

_____

[3]Further, we discern nothing absurd here in requiring a sophisticated party, a large bank, to strictly comply with a notification requirement when it seeks to recover on a judgment. Accordingly, we reject BMO's absurdity argument. Although the dissent suggests that following the letter of the law renders an unfair outcome in this instance, we note that "law without equity, though hard and disagreeable, is much more desirable for the public good, than equity without law: which would make every judge a legislator, and introduce most infinite confusion." 1 William Blackstone, *Commentaries on the Laws of England* 62 (4th ed. 1770).

LEE, J., with whom PICKERING, J., agrees, dissenting:

I cannot agree with the majority's decision to void a judgment based on the method of service of the renewal notice where (1) requiring strict compliance under these circumstances would lead to an absurd result and (2) a plain reading of NRS 17.214 indicates that service is not a mandatory prerequisite to judgment renewal. *See Smith v. Zilverberg*, 137 Nev. 65, 72, 481 P.3d 1222, 1230 (2021) ("When interpreting a statute, we look to its plain language."). I therefore dissent and would instead reverse and remand to allow the district court to determine whether the Whittemores had actual notice of the judgment renewal and suffered any prejudice as a result of the method and timing of service.

*Mandating strict compliance under NRS 17.214(3) would lead to an absurd result under the facts of this case*

Mandating strict compliance with NRS 17.214(3)'s manner of service requirement needlessly extols literalism to the detriment of practicality and equity. *See Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. 470, 475-76, 255 P.3d 1275, 1278 (2011) (recognizing that strict compliance with a statute's requirements may not be necessary when it is not required to achieve the statute's purpose). This court previously found that substantial compliance is sufficient in fulfilling service and notice requirements where (1) a party has actual notice and (2) the party is not prejudiced. *See Hardy Cos., Inc. v. SNMARK, LLC*, 126 Nev. 528, 536, 245 P.3d 1149, 1155 (2010) (holding that the notice requirement for a mechanic's lien is satisfied if the landowner had actual notice and is not prejudiced).

In this case, BMO complied with all renewal and service requirements under NRS 17.214 prior to the expiration of the judgment, except for the manner in which it served its notice on the Whittemores. BMO did not strictly comply with NRS 17.214(3) (requiring service of the notice of judgment renewal to be sent to the debtor via certified mail) and

instead electronically served the Whittemores' legal counsel. BMO further notified the Whittemores via certified mail within two weeks after the judgment would have expired. This two-week delay, especially considering the timely notice provided to the Whittemores' counsel, does not subvert the purpose of the statute.

I therefore submit that an application of the substantial compliance rule of construction when assessing the service requirements set forth in NRS 17.214 would be more appropriate. This would allow courts to consider the underlying circumstances in determining whether (1) a debtor was sufficiently on notice of the continuing obligation to repay the judgment, (2) the debtor would be prejudiced if the judgment was renewed, and (3) the creditor made reasonable efforts to comply with the service requirements.

Alternatively, even under a strict compliance analysis, this court has previously elucidated that "strict compliance does not mean absurd compliance." *Einhorn v. BAC Home Loans Servicing, LP*, 128 Nev. 689, 696, 290 P.3d 249, 254 (2012). Guided by this principle, this court held that a judgment was not voided where a creditor did not record the affidavit of renewal within three days of filing because the creditor "satisfied all of NRS 17.214's service and recording requirements before the judgment expired." *Hesser v. Kennedy Funding, Inc.*, No. 81383, 2022 WL 354504 (Nev. Feb. 4, 2022) (Order of Affirmance) (affirming the denial of a motion to declare a judgment expired). Because "the purpose of procuring reliable title searches [was] not affected," the court reasoned that "mak[ing] the outcome turn on the present facts 'exalts literalism for no practical purpose.'" *Id.* (quoting *Einhorn*, 128 Nev. at 697, 290 P.3d at 254). *See also* 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:2, at 177 (7th ed. 2014) ("Statutes should be read sensibly

rather than literally and controlling legislative intent should be presumed to be consonant with reason and good discretion.").

Substantial compliance, especially under the circumstances presented here, does not impinge upon a judgment debtor's due process rights, entirely fulfills the purpose of the statute, and gives judgment creditors an opportunity to avoid a draconian outcome—an irreversible and complete eradication of their judgment. I therefore submit that the court should reverse and remand the matter for further findings by the district court regarding whether the Whittemores had actual notice of the renewal and any potential prejudice.

*A plain reading of the statute indicates that service is not a prerequisite to renewal under NRS 17.214*

The plain language of NRS 17.214(1)(a) provides that "[a] judgment creditor . . . may renew a judgment which has not been paid by: (a) [f]iling an . . . 'Affidavit of Renewal of Judgment'" that includes specific information. NRS 17.214(1)(b) provides that the affidavit must be recorded if the judgment was recorded. NRS 17.214(2)-(4) are enumerated separately, and unlike NRS 17.214(1), nothing within those provisions states that they are part of the renewal process. This marks a clear distinction between the renewal requirements under NRS 17.214(1) and the remaining provisions of the statute—which this court must not disregard. *See Platte River Ins. Co. v. Jackson*, 137 Nev. 773, 777, 500 P.3d 1257, 1261 (2021) (recognizing the canon of statutory construction that "a legislature's omission of language included elsewhere in the statute signifies an intent to exclude such language"); *see also Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967) ("The maxim '*Expressio Unius Est Exclusio Alterius*', the expression of one thing is the exclusion of another, has been repeatedly confirmed in this State.").

NRS 17.214(2) provides that "[t]he filing of the affidavit *renews the judgment* to the extent of the amount shown due in the affidavit." (Emphasis added.) This shows that the judgment is deemed renewed upon the filing of the affidavit of renewal of judgment. This reading is further reinforced by the language of NRS 17.214(3), which provides that "[t]he judgment creditor . . . shall notify the judgment debtor *of the renewal of the judgment.*" (Emphasis added.) This presupposes that renewal of the judgment is complete by the time notice is served.

Had the Legislature intended for service to be a prerequisite of renewal, NRS 17.214 could have instead required that the creditor send notice of the intent to renew or of the filing of the affidavit of renewal of judgment. The Legislature did not do so; thus, the only reasonable interpretation of NRS 17.214(3)'s plain language is that renewal occurs prior to notice and that the notice requirement only serves to make the debtor aware that the judgment has been renewed. *See State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011) ("The starting point for determining legislative intent is the statute's plain meaning; when a statute is clear on its face, a court cannot go beyond the statute in determining legislative intent." (internal quotation marks omitted)).[1]

If the court looks beyond the plain language, legislative history and public policy considerations underlying the enactment of NRS 17.214 further support the interpretation set forth above. NRS 17.214 was enacted in 1985. *See* 1985 Nev. Stat., ch. 223, § 2, at 699-700. NRS 17.214 was amended in 1995. *See* 1995 Nev. Stat., ch. 475, § 21, at 1525. The 1995

---

[1]To the extent that this court imported a service requirement to renew a judgment based on NRS 17.214(3) in *Leven v. Frey,* I would overrule that holding based on the analysis above. 123 Nev. 399, 402-04, 168 P.3d 712, 714-15 (2007).

SUPREME COURT
OF
NEVADA

(O) 1947A

4

amendment added NRS 17.214(1)(b) as it appears in the statute today. The 1995 amendment was a "housekeeping attempt" meant to provide the public with easier access to information on liens and to facilitate reconveyances of real property where appropriate. *See Hearing on S.B. 455 Before the S. Judiciary Comm.*, 68th Leg., at 10 (Nev., May 23, 1995). The recording requirement was included so that the judgment renewal could be "easily ascertained" in title searches. *Id.* at 11. The 1995 amendment was not enacted to alter the standard means to renew a judgment—filing the affidavit; rather, it simply imposed an additional conditional requirement where a judgment was recorded.

Bisecting the service requirement from the renewal requirements demonstrates that each section serves a distinct purpose. The service requirement is implemented to put the debtor on notice of the continuing obligation to repay the judgment, not to effectuate renewal of the same. *See, e.g., Orme v. Eighth Judicial Dist. Court*, 105 Nev. 712, 715, 782 P.2d 1325, 1327 (1989) ("The primary purpose underlying the rules regulating service of process is to [e]nsure that individuals are provided actual notice of suit and a reasonable opportunity to defend."). Therefore, I must dissent.

_____, J.
Lee

I concur:

_____, J.
Pickering